(Decided 22nd January, 1885.)

---

HOWARD JOHNSON *vs.* THE PHILADELPHIA, WILMING-
TON AND BALTIMORE RAILROAD COMPANY.

*Pleading—Railroad Company—Excursion Ticket—Expul-*
*sion of Passenger.*

Where the replication fails to traverse the facts stated in the plea, the
plaintiff is held to the admission of their truth.

Johnson *vs.* Phila., Wilm. & Balt. R. R. Co.

Where an excursion ticket is sold by a railroad company to a passenger at a reduced rate, and upon special conditions, the terms of which are printed on the ticket; and one of the conditions is that it shall be used " for a continuous trip only," and " is not good to stop off,"—the purchaser who accepts and uses it, is bound to take a train which will carry him continuously through from one station to the other, both in going and returning, and not to stop off at an intermediate station while going either way.

If the passenger on his return knowingly takes a train which does not go as far as the station at which he purchased his ticket, and with the intention of stopping off at an intermediate station, the officers of the company are justified in refusing to accept the return coupon of the ticket for his fare, and in putting him off the train on his refusal to pay the regular fare demanded, or to produce a proper ticket to the station he intended to stop at.

And it is no excuse for his refusal, that he went to one of the gate keepers at the station where he took the train, who examined his ticket and *negligently* assigned him to the wrong train.

In the absence of proof that the gate keeper had authority to vary the terms of contracts for the company, the passenger cannot get rid of the conditions of his contract by showing that he relied on the actual or implied direction to take the train, given either through the *belief* of the gate keeper that the ticket was good for the train, or through his negligence, ignorance or mistake.

APPEAL from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court.

The cause was submitted to ALVEY, C. J., STONE, MILLER, IRVING, and BRYAN, J.

*William T. Warburton,* and *Albert Constable,* for the appellant.

*William J. Jones,* and *Alexander Evans,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This suit was brought by the appellant against the appellee to recover damages for having been wrongfully ejected from its cars. The declaration alleges that on the 22nd of May, 1883, the plaintiff purchased from the defendant an excursion ticket from Elkton to Philadelphia. and return, whereby the defendant became bound to carry him safely over its road on this trip, and treat him civilly and properly, but the defendant had rude and incompetent servants on the train and in charge thereof, who refused to allow him to ride on its road, dragged him from his seat, expelled him from the train, and other wrongs to the plaintiff then and there did.

Instead of meeting this simple case with the plea of *non cul.* and trying it upon issue joined on that plea, the docket entries show there were an extraordinary number of special pleas and replications, a part of which only are contained in the record. It contains only *four* lengthy pleas, and *five* similar replications, to which numbers they had been reduced by the withdrawal of the others, there having been originally eight pleas and many more replications. The Court overruled the demurrers to these four pleas, sustained the demurrers to the five replications, and gave judgment for the defendant, from which the plaintiff has taken this appeal. From this we infer, though it is not so stated in the record, that the plaintiff did not wish to amend or answer over, and was willing that final judgment should be given for the defendant, relying upon the success of his effort to reverse the ruling of the Court upon these demurrers. It is therefore our duty to pass upon the sufficiency of these pleadings, but before examining them, it becomes important to ascertain the rights and obligations of the plaintiff under the ticket which he purchased.

This ticket is set out *verbatim* twice in the pleas and once in the replications and it consists of two connected

parts, on the first of which there are printed, below the name of the defendant the terms "*Excursion. Elkton to Philadelphia. Subject to conditions named in contract. Not good to stop off,*" and on the second, also below the name of the defendant, the terms. "*Three days' excursion— return coupon. Philadelphia to Elkton;*" and then follows this contract: "In consideration of the reduced rate at which this ticket is sold, it is agreed that it shall be used within three days, including the day of sale, as stamped on the back, *for a continuous trip only,* and by its acceptance the purchaser becomes a party to, and binds himself to a compliance with these conditions. It is not transferable nor good to stop off."

We find no difficulty in construing this contract. The conditions that the ticket shall be used "for a continuous trip only," and is "not good to stop off," mean that a purchaser who accepts and uses it, is bound to take a train which will carry him continuously through from one city to the other, both in going and returning, and not to stop off at an intermediate station while going either way, and the obligation of the company is to carry him safely, and to furnish trains which will thus carry him continuously from one place to the other. In *Pennington vs. Phil., Wil. & Balto. R. R. Co.*, 62 *Md.*, 95, the party attempted to use the return coupon of a similar ticket after the expiration of the three days, and it was held that the limitation as to time was good and binding upon him, notwithstanding there was proof that he never read the ticket, and that the agent who sold it to him, told him it was "good until used." In that case we decided that where a ticket is sold at less than the usual rates, on certain conditions as to its use, if the purchaser accepts and uses it, he makes a contract with the company, according to the terms stated, and the reduction in the fare is the consideration for his contract; and that after he has availed himself of this reduction by using the ticket to make the trip one

110 · MARYLAND REPORTS.

Johnson *vs.* Phila., Wilm. & Balt. R. R. Co.

way, it is too late for him on his return to allege that he did not know on what terms the reduction was made, when he had ample opportunity of learning them from the ticket in his possession. According to the law thus stated, the plaintiff was bound to observe all the conditions expressed on the face of his ticket, and could not hold the defendant to any other terms than those thus stated; and this being so, there is not much difficulty in disposing of these pleadings.

The substantial averments of the pleas are that the plaintiff purchased and accepted this ticket, and on the same day took passage on a train which carried him directly through from Elkton to Philadelphia, and on this side gave up to the conductor the first part of his ticket; that on the next day at Philadelphia, he got on a train which did not run as far as Elkton, and was only intended and advertised to run to Wilmington, all of which *he well knew* at and before the time he entered said train; that he moreover entered this train with the purpose and intention not to make a continuous trip to Elkton, but to stop off at an intermediate station; that after the train had started and before it had reached South Street Station in Philadelphia, the plaintiff, on demand of the conductor, showed him for his passage the return coupon of this excursion ticket, and announced his intention not to make a continuous trip to Elkton but to stop off at an intermediate station and to use this coupon for that purpose; that the conductor thereupon informed him that this coupon was not good for that train which ran only to Wilmington, nor for the purpose of stopping off, and told him he must pay his fare or produce a proper ticket to the station he intended to stop at, which he refused to do; that the conductor then told him if he would neither pay his fare nor produce a proper ticket he must leave the train at South Street Station, and when the conductor gently laid hands upon him to remove him at that station he resisted violently, rendering it necessary for other agents to be called to assist the

conductor, and they put him off, using no more force than was absolutely necessary to overcome his resistance and effect his removal. Now in view of what we have already said as to the binding effect of the conditions attached to this ticket, it is plain that the facts thus stated in these pleas, afford a complete defence to the case made by the declaration. The question then is, do the replications set out a sufficient answer to this defence?

These replications fail to traverse any of the facts stated in the pleas, and the plaintiff is therefore held to the admission that they are true, under the rule that every pleading is taken to confess such traversable matters alleged on the other side as it does not traverse. *Stephen's Pl.*, 216. The only answer to these admitted facts, made by the replications and relied on by the appellant's counsel in their brief, is what is stated in two of them, and this, as to the first, is substantially as follows:. That the defendant had established at its Broad Street Station in Philadelphia, a system for the management of its passenger traffic by which passengers were not allowed to act on their own judgment in getting on the cars, but the defendant itself undertook by means of its agents called gate keepers, to assign passengers holding tickets to the proper train; that plaintiff, wishing to return towards Elkton to Chester, a station on defendant's road between Philadelphia and Wilmington, went to one of these gate keepers who examined his ticket and *negligently* assigned him to the wrong train. The other states substantially the same facts and alleges that it was the duty of the gate keepers to inspect the tickets of all passengers, and in case a passenger held a ticket which the agent *believed* entitled him to a ride on the train about to be despatched, to admit such person through the gate and into the train as a passenger thereon; that the gate keeper inspected plaintiff's ticket, and *believing* him entitled to ride on the train then about to be despatched, admitted him into said train as a passenger thereon.

This is all that the plaintiff has to set up as an excuse for violating his contract with the defendant company by getting on to a train, which *he knew* at and before the time he boarded it, did *not run through* to Elkton, and with the purpose and intention of *stopping off* at an intermediate station. All that need be said of such an excuse is, that, while it is similar, it is not so strong, as that which was relied on without avail in *Pennington's Case.* There the agent who sold the ticket told the plaintiff that it was "good until used," and to that our reply was, that there was no evidence that the ticket-agent was authorized to make, or to vary the terms of, *contracts* for the company, and our reply here is, that there is no averment in these replications that the gate-keepers had any such authority or power. In that case there was proof that the plaintiff did not actually read his ticket, but there is no averment to that effect in behalf of the plaintiff in this case, and it would not have availed him if he had made it. He cannot get rid of the conditions of his contract by saying that he relied upon the actual or implied direction to take this train which was given, either through the *belief* of the gate-keeper that the ticket was good for the train, or through his negligence, ignorance, or mistake. The contract could not be varied by any such direction. He knew, or was in law presumed to know, what the contract was, and he boarded a train which he knew would not take him to Elkton, and that too with the deliberate purpose of violating another condition of his contract by stopping off at Chester; and we have no difficulty in deciding that the conductor properly ejected him from a train upon which he had no right to be, except upon the condition of paying his fare to the place he intended to stop at. The Court was clearly right in sustaining the demurrer to these replications, and the judgment must be affirmed.

*Judgment affirmed.*

(Decided 22nd January, 1885.)