# THE UNITED RAILWAYS AND ELECTRIC COMPANY *vs.* ROBERT F. HARDESTY.

*Carriers of Passengers—Coupon Detached From Book of Tickets By Holder Not Valid When Contract Provides for Detachment by Conductor—Passenger Offering Such Detached Coupon and Refusing to Exhibit Book May be Ejected Without Second Demand for Fare.*

A condition printed on a reduced rate railway ticket to the effect that a coupon affixed thereto shall be invalid, unless detached by the conductor is a reasonable regulation; an attempt to use a previously detached coupon and a refusal to exhibit the book from which it had been taken, forfeits the right of the holder to travel on the car, and unless he offers to pay the fare he may be lawfully ejected.

A book of tickets issued by an Electric Railway Company provided on its face that each undetached coupon entitled the purchaser or member of his family to travel over certain lines and that the coupons would not be good unless detached by the conductor. Plaintiff boarded a car of the company and in response to a demand for his fare offered to the conductor a coupon which he had previously detached from such a book of tickets, the book itself not being then in his possession. The conductor received the coupon and rang up the fare, but immediately required the plaintiff to show the book. Plaintiff replied that he could not show it and upon his repeated refusal so to do, the conductor put him off the car. In an action to recover damages for such expulsion. *Held,*

1st. That under the contract embodied in the ticket plaintiff had no right to travel on a detached coupon, and it made no difference that the conductor rang up the fare before requiring the book to be exhibited.

2nd. That upon plaintiff's failure to produce the book of tickets he was under the legal obligation to pay the fare in money, and it was not necessary for the conductor to make a second demand for plaintiff's fare before ejecting him from the car, since the offer of a worthless coupon was not a compliance with the original demand for the fare.

Appeal from the Baltimore City Court (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Fielder C. Slingluff,* for the appellant.

*Howard Bryant,* for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

The single question raised on this record is presented by the prayers for instructions to the jury.    These are the facts: The appellee, Dr. Hardesty, lived, with his family, at West Arlington.    His wife purchased in her own name what is called a twenty trip coupon-book which entitled the person named and those described therein to ride, subject to certain conditions, on the electric railway of the appellant between West Arlington and Baltimore.    The coupon-book was issued by the appellant company at a reduced rate.    In considera-tion of the reduced rate the purchaser agreed to comply with the reasonable regulations of the company.    The coupon-book declares that "each *undetached* coupon of this book will entitle Mrs. R. F. Hardesty, a householder, or member of her immediate family or a servant therein, to ride" over spec-ified lines of the appellant's railway "between the points and in the direction named in the coupon and in accordance with the conditions of the contract in back of book."    It was fur-ther stipulated on the coupons that they would not be *"good unless detached by the conductor."*    On December the twenty-fourth, eighteen hundred and ninety, Dr. Hardesty and his wife used this coupon-ticket in going from West Arlington to Baltimore.    After reaching Baltimore the Doctor tore out of the book, coupons for a return trip from Baltimore to West Arlington and handed back the book to his wife.    Later, on the same day, but not in company with his wife, he boarded a car going to his home.    There is a flat conflict in the evi-dence as to what occurred when the conductor demanded from the appellee his fare ; but as the case is presented on the prayers of the defendant, the version given by the plaintiff and his witnesses must be accepted as correct.    According to that version, when the conductor demanded the appellee's fare, the latter handed him one of the previously *detached* coupons which the conductor received and then rang up the fare ; but immediately said to the appellee : "You will have to show the book."    The appellee replied : "I cannot show you the book ;" and the conductor answered : "You will

have to show the book ;" and the appellee responded : "I cannot show it to you ;" and thereupon the conductor said : "I will have to put you off the car." The appellee then said : "You can put me off the car, I suppose, but I cannot show you the book." After some conversation with the motorman the conductor returned and again asked the appellee : "Will you walk off the car," and the appellee replied : "I won't walk off the car, you will have to put me off." The appellee testified that the conductor "then took hold of me and put me off the car." When the appellee got off the car he waited about fifteen minutes on the sidewalk for the next car which he took and upon which he paid his fare. The appellant asked that the case be taken from the jury on the ground that there was no legally sufficient evidence to entitle the appellee to recover. This request was refused and the jury returned a verdict for four hundred dollars upon which judgment was entered in favor of the appellee ; and from that judgment this appeal was taken.

It is clear and indisputable, we think, that the appellee had no right whatever to ride on the detached coupon. It was not an ordinary railway ticket. Under the specific terms of the contract embodied in the ticket, a *detached* coupon was wholly void. That was a regulation which the company had the power to make and one to which the purchaser of the ticket expressly agreed. As a token of the holder's right to ride on the car the detached coupon was of no more value than a slip of blank paper would have been. The holder of the coupon was bound to know this and he was equally bound to know that the tender of a *detached* coupon, even if taken up by the conductor, was no more a payment of the car fare than the tender and acceptance of a counterfit coin would have been. "The ticket," this Court has said in speaking of a limited and reduced rate ticket, "is neceesarily the conclusive evidence of the nature and extent of the passenger's right." *W. M. R. R. Co.* v. *Stocksdale,* 83 Md. 253. As a detached coupon was void by the very terms of the contract, it was no ticket ; and as Dr. Hardesty had, therefore, presented no

ticket at all he obviously had no right to ride on the car un-
less he paid his fare.   The fact that the conductor had rung
up the void coupon as though it had been a valid coupon, did
not make it what it was not, and clearly did not give the pas-
senger a right to be transported when his right to be carried
on the car depended altogether on his complying with the
rules by paying his fare, and did *not* depend on the fact that
the conductor had rung up the fare as paid when it had not in
reality been paid.   He was not, therefore, entitled to be car-
ried as a passenger.   If this be so, the conductor had the
right to eject him from the car unless *before* doing so he was
obliged to demand from the appellee and be refused the pay-
ment of the fare in cash.   This is the pivotal point of the
case.   On the part of the appellee it is insisted, and the effect
of the instruction given in the trial Court at the instance of
the plaintiff is, that before the conductor could rightfully expel
the plaintiff from the car he was bound to ask him to pay his
fare in cash ; and that not until after such a request had been
made and not until after the plaintiff had refused to comply
with it, could the conductor eject the passenger.   In other
words, having once demanded the appellee's fare and having
received a worthless ticket instead of the fare, the conductor
was legally bound to make a *second* demand before removing
the passenger from the car.   Is that contention legally sound?

When the appellee was told that his detached coupon was
worthless, unless he exhibited the book from which it had been
taken (and this was a fact that the face of the ticket disclosed),
why was it any more the duty of the conductor to *ask* for the
fare in cash, than it was the duty of the passenger to volun-
tarily *tender* it in cash?   The passenger knew that he had no
right to ride without paying *in some way*.   It is a matter of
common knowledge of which the Court will take judicial
notice and of which the public are bound to take notice that
railroad passenger trains are operated to carry passengers for
hire.   *Condran* v. *C. M. & St. P. R. Co.*, 67 Fed. Rep. 522;
s. c., 28 L. R. A. 749.   There were but two ways in which
he could pay, either by ticket or in cash.   When he tendered

the one and was informed that it was insufficient because detached, he knew just as well as the conductor knew, that his right to remain on the car depended on his doing the only other thing he could do, viz., paying his fare in cash. If he knew this, and he was bound to know it and therefore must be held to have known it, what possible reason can be assigned for holding, as matter of law, that the company, through its conductor, was legally bound to ask the passenger to do, precisely what the latter knew he was obliged to do? And how can the failure of the conductor to ask the passenger to pay a fare which the passenger was well aware he was required to pay if he wished to remain on the car after he had refused to exhibit the book, relieve the passenger from the obligation to voluntarily pay the fare? The right of a carrier of persons to collect fares and to receive them does not depend on the fact that the conductor or other servant *demands* the fare. The right to collect and receive fare arises out of the circumstance that the passenger enters the conveyance for the purpose of being carried therein. By entering the conveyance for that purpose he agrees to pay the fare and the duty to pay it is thereby imposed. Morally and legally he is as much bound to pay the fare when *not* demanded as he is when it *is* demanded of him, because, the duty to pay has not its origin in the demand for payment; and a failure to demand it cannot, consequently, be treated as giving him a right to be transported gratuitously. This being so, the primary and continuing obligation is obviously on the passenger to pay the fare. The demand for it by the carrier is made with a two-fold view, viz., *first*, for the convenience of the passenger to save him the annoyance of himself seeking the conductor to deliver the ticket or fare to the latter; and *secondly*, for the protection of the company against individuals who would not scruple to ride without paying if they could evade making payment. But neither of these considerations can be converted into, or treated as, a requirement that, when a demand has been once made for a fare and has not been complied with, or what is the same thing, has been complied with by the delivery of a worthless

ticket which the holder was bound to know was worthless, the conductor must make a new demand before the passenger can be expelled.   None of the cases relied on by the appellee support the contention, as will be seen in a moment; and it has not been shown that the rules of the company require such a demand to be made.

Whilst the duty to pay the fare does not originate in or rest upon the demand for it, there can be no expulsion of a traveler for not paying until he has *refused* to pay, and there cannot be a refusal until there has been a demand of some kind.   In the case at bar there *was* a demand ; but there was no *second* demand and the expulsion of the appellee without making a *second* demand is the sole basis upon which the case of the appellee must rest.   Three cases have been cited by the appellee's counsel.   They are *B. C. A. Ry. Co.* v. *Kirby*, 88 Md. 409; *W. M. R. R. Co.* v. *Stocksdale*, 83 Md. 252; and *P. W. & B. R. R. Co.* v. *Hoeflich*, 62 Md. 304.   In the first the plaintiff was riding in an express train on a ticket alleged not to be good on that train, but which was in fact good there.   When he presented the ticket the conductor refused to accept it. Afterwards the conductor demanded the ticket and when the passenger refused to surrender it the conductor demanded the fare and this the passenger refused to pay, whereupon he was ejected from the train.   This Court said :  " The jury should have been instructed that although they should find that the conductor had refused the ticket in the front car, yet if he afterwards and before ejecting the plaintiff demanded the ticket or the payment of the fare, and that plaintiff refused both demands and that thereupon he ejected the plaintiff, because he would do nothing, there could be no recovery."   In the second case the plaintiff was traveling on an expired limited ticket. The conductor refused to accept it and demanded the payment of the fare.   Upon the plaintiff refusing to pay he was expelled from the train.   We said :  " If the plaintiff was not entitled to travel on the ticket so offered by him and refused to pay the fare when demanded, then his ejectment from the train was lawful and no damages therefor can be recovered in an action

of tort." In both cases, as in a great many others that might have been cited, a demand for the payment of the fare in money had actually been made by the conductor, and it was made after he had refused to accept the previously tendered ticket; but in neither case was it held or intimated that such a demand was a necessary prerequisite to the expulsion of the passenger. No such proposition was involved. The language used in the two opinions and just above quoted had relation to the facts in evidence, but it does not purport to lay down as a rule of law, that there was an obligation to make the second demand before ejecting the traveler. The third case was one in which the plaintiff, who had a ticket and had delivered it to the conductor, was accompanied by her sister, a child of eleven years of age, for whom the plaintiff had bought no ticket. When the conductor inquired as to the age of the child and was informed by the plaintiff, he stated that the plaintiff would be required to pay half fare for her. This the plaintiff refused to do and both she and the child were put off the train. That case bears no analogy to this. It was the ordinary case of a refusal to pay a fare when demanded. In nearly all the reported cases, and they are very numerous indeed, it will be found that there was in fact a demand by the conductor for the payment of the fare in money after he had refused to accept a worthless or expired ticket and the decisions, as far as respects the right of recovery, turned, not upon the duty of the conductor to make such a demand before expelling the passenger, but upon the question as to whether the ticket which he had refused to accept was a valid ticket or not; and in no way do they even suggest, much less determine, that it was necessary for him to make such a demand, or that it was any more obligatory, in law, for him to make a demand of that sort before ejecting the traveler, than it was incumbent on the passenger to voluntarily tender the fare. The following cases, among others, may be consulted, *B. & O. R. R. Co.* v. *Blocher*, 27 Md. 277; *McClure* v. *P. W. & B. Ry. Co.*, 34 Md. 532; *Johnson* v. *P. W. &. B. Ry. Co.*, 63 Md. 106; *P. W. & B. Ry. Co.* v. *Rice*, 62 Md. xv; "*unreported;*" *Same* v. *Same*, 64 Md. 63;

*Boylan* v. *Hot Springs R. Co.*, 132 U. S. 146; and it will be found that the question involved on this appeal was neither suggested on the records nor did it arise on the facts, and consequently it was not directly or incidentally decided.

A railroad company may eject from its accommodations all persons who refuse compliance with its reasonable regulations. 19 *Am. & Eng. Ency. of Law*, (1st ed.) 903. This has been so often announced by the Courts that it may be said to have become axiomatic law. A condition printed on a reduced rate ticket to the effect that a coupon affixed thereto shall be invalid unless detached by the conductor is undoubtedly a reasonable regulation. 25 *Am. & Eng. Ency. of Law*, 1090 and cases in notes 2, 3 and 4. An attempt to use a previously detached coupon and a refusal to exhibit the book from which it had been taken clearly forfeits the right of the holder to proceed farther on the car. *Hibbard* v. *N. Y. & Erie R. R. Co.*, 15 N. Y. 455. If his right to remain on the car is thus forfeited by his own act it was lawful to eject him, and he could avoid expulsion only by paying or offering to pay his fare. Therefore, if he wished to remain in the car the duty was on him to tender his fare to the conductor, in the absence of any rule of the company requiring the conductor to demand the fare. There is no evidence that there is such a rule. The case of *Texas Pac. R. Co.* v. *James*, 82 Tex. 306, 15 L. R. A. 347, throws some light on the question. James boarded a train of the railway. His ticket entitled him to ride to Atlanta. He fell asleep on the train and passed Atlanta. When the conductor went through the train after having passed Atlanta, he asked James if he did not wish to get off at Atlanta and having been answered in the affirmative he stopped the train to put him off. James testified that he told the conductor after looking out of the car window that "we were in Black Bayou Bottom, one and a half or two miles from Atlanta * * * * * that I did not want to get off there. I asked the conductor to let me go on to the next station," but the conductor put him off. There was no evidence that the plaintiff offered to pay his fare to the next stopping place ;

and it nowhere appears in the report of the case that the con-
ductor demanded fare from the plaintiff to the next station.
The railroad company asked the Court to charge the jury to
the effect that it was not the duty of the company to carry
the plaintiff to the next station unless he paid or offered to
pay his fare to that point, and also that unless the plain-
tiff tendered or offered to pay his fare to the next station, the
conductor had the right to put him off.  The trial Court re-
fused to charge the jury in the way thus requested and on
appeal the Supreme Court of Texas said: "We are of opinion
that this was error.  The plaintiff's own neglect led to his
being carried beyond his destination.  He was not entitled to
a free passage to the next station.  He could have acquired
that right by paying or offering to pay the fare.  A formal
tender was not necessary; nor even, perhaps, a specific offer
to pay.  But a mere willingness to pay, unaccompanied by a
move or act calculated to suggest to the conductor his desire
to do so, was not, in our opinion, sufficient to place the con-
ductor in the wrong in ejecting him from the train."  The
judgment in favor of James was reversed.  If, as matter o
law, the conductor was bound to demand the fare before ex-
pelling the plaintiff, the judgment would have been affirmed.
See also, *Norfolk R. R. Co.* v. *Wysor,* 82 Va. 250; *Louisville
R. R. Co.* v. *Harris,* 9 Lea, (Tenn.) 180; *De Lucas* v. *N. O.
& C. R. R. Co.,* 38 La. An. 930.

But we need not prolong this judgment by further citations.
If Dr. Hardesty had tendered the fare to the conductor and
had then been expelled, the company would have been answer-
able.  He had ample opportunity to pay the fare which it was
his duty to pay when he declined to show the coupon-book.
His attempt to ride on a worthless ticket did not impose upon
the conductor an obligation to make a second demand for the
fare, but did require the holder of the ticket if he wished to
avoid being ejected, to himself make tender of payment.  As
the plaintiff was in the wrong throughout he had no cause of
action against the company and the case should have been
withdrawn from the jury.  The prayer which the appellant

presented and which asked an instruction that the verdict should be for the defendant ought to have been granted. There was error in rejecting it. Because of that error the judgment must be reversed and as upon the plaintiff's own showing he is not entitled to recover, a new trial will not be awarded.

> *Judgment reversed with costs above and below, without awarding a new trial.*

(Decided March 6th, 1902.)