# ROBERT M. GARRISON *vs.* UNITED RYS. & ELEC-
.TRIC CO.

*Carriers—Street Railway Transfer Invalid After Expiration of Time
Limit—Expulsion of Passenger.*

When a passenger on a street railway car receives a transfer entitling him
to travel on a connecting line if presented within a time limited upon
its face, and the passenger presents the transfer on the connecting line
after the expiration of the time limit, the conductor is justified in refusing
to accept it and in demanding the fare, although no car had passed the
connecting point until after the expiration of the time limit, and upon
the refusal of the passenger to pay the fare he may be lawfully ejected
from the car.

When the conductor of a car has given a passenger a reasonable time to
pay the fare and the passenger has persistently refused to do so, and
the conductor has begun the process of expulsion by stopping the car
or by using force, the expulsion may be completed, although the pas-
senger afterwards offers to pay the fare.

The Act of 1900, ch. 313, requires street car companies in Baltimore City
to give a free transfer when requested "upon the payment of each cash
fare, which transfer shall be good at all points of intersection of lines of
railway for a continuous ride." *Held,* that the railway companies have
a right to limit the time within which a transfer must be used.

If by the company's fault the transfer expires before the holder has had
an opportunity to use it, and in consequence he is required to pay his
fare, he would have his action against the company.

Appeal from the Court of Common Pleas (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Hyland P. Stewart,* for the appellant.

The transfers must be requested from the conductor
when the cash fare is paid and in many cases they are given a
mile or two, and sometimes three miles from the intersecting
point, and the conductor knowing the time he is scheduled to
arrive at said point, punches the transfers at a time he calcu-
lates he will arrive there, allowing a margin of four or five

minutes to make connection.   The public is not in general, nor was the plaintiff in particular, familiar with such sched- ules of the defendant's cars.   If either the first car or the connecting car is delayed by a coal cart, the blowing out of a fuse or any of the number of other things that may and do delay street cars, either of said cars being delayed five or ten minutes without any fault of the plaintiff, does he lose his right to ride on his transfer?

It is true that many cases have been decided where it has been held that where a passenger undertakes to ride on a ticket which has expired by his own fault; or has been de- tached by him against the terms of the ticket, or on its face is bad when taken, then he must pay his fare over again; and these are the cases cited by the defendant.   But this is not the rule where the ticket is good when accepted, but becomes bad by some default of the carrier.   *Rice's case*, 64 Md. 63.

In *Kiley* v. *Chicago City R. Co.*, 9 Amer. Neg. Reports, 481, the whole line of cases referred to by the defendant is severely criticised.   See also *Heffion* v. *Detroit R. Co.*, 92 Mich. 406; *O'Rourke* v. *Ry. Co.*, 103 Tenn. 124; *Laird* v. *Traction Co.*, 166 Pa. 4; *Ellsworth* v. *Ry. Co.*, 95 Iowa, 98; *Ry. Co.* v. *Delony*, 65 Ark. 180; *Head* v. *R. Co.*, 79 Ga. 358; *Burnham* v. *Grand Trunk*, 63 Me. 299; *Ry. Co.* v. *Bray*, 125 Ind. 229; *Murdock* v. *B. & A. R. Co.*, 137 Mass. 293.

The assault on the plaintiff was committed after he had started to leave the car and was wholly unprovoked and un- necessary to expel the plaintiff if the conductor had such right of expulsion.   Consequently it was error to refuse the plaintiff's third prayer.   *Sloan* v. *Edwards*, 61 Md. 89, 94; *P. W. & B. R. R. Co.* v. *Larkin*, 47 Md. 155; *Byers* v. *Hor- ner*, 47 Md. 23; *Thillman* v. *Neal*, 88 Md. 525; *B. & O. R. R.* v. *Barger*, 80 Md. 23.

Even granting that the plaintiff had lost his right to ride on the transfer through the default of the defendant and without any fault whatever on his part, though he had not gone one- tenth of his contemplated and contracted journey, still before he was attacked by the conductor, he had offered to pay his

fare in cash and when that was refused had promptly started to leave the car, the company is still liable for the unprovoked assault as well as for the illegal expulsion.

The defendant has undertaken to override the Act of 1900, ch. 313, and to issue a transfer to suit their convenience. The Act gives an absolute right to a *continuous* ride, the company gives a *conditional* one provided their conductors calculate the time of punching the transfers correctly, provided the first car gets there before time so punched; provided the intersecting car arrives before the time punched, and provided after arrival sufficient time is allowed passenger to get on intersecting car before time limited, none of which provisions are within the control of the passenger but all in the control of the defendant absolutely.

*B. Howell Griswold, Jr.,* and *J. Pembroke Thom,* for the appellee.

The ticket or transfer, as presented to the conductor of the train or car upon which the passanger presents it, must be the conclusive evidence of the passenger's right to ride thereon. *Blocher* v. *B. & O. R. R.,* 27 Md. 277 (in which the defendant's third prayer was held to be good, p. 286). *McClure's case,* 34 Md. 532; *Pennington* v. *F. W. & B.,* 62 Md. 95; *Stocksdale* ats. *W. M. R. R.,* 83 Md. 245; *Hardesty* v. *United Rys. & E. Co.,* 94 Md. 661.

The decisions do not say that a man must pay his fare the second time, without any redress whatsoever, but only that under the circumstances he must not precipitate a row upon the street cars to the discomfort of other passengers. This is plainly decided in the Maryland cases, and we need not go beyond this State for authorities, but a few of the more interesting ones are appended. The point was plainly presented to the Massachusetts Court in the case of *Bradshaw* v. *South Boston Ry. Co.,* 135 Mass. 407, which case has been cited with approval by our Court of Appeals in the *Stocksdale case.* See also the following cases : *Wakefield* v. *South Boston Ry. Co.,* 117 Mass. 544; *Kiley* v. *Chicago Ry. Co.,* 189 Ill. 384 (and

cases cited); reported also in 52 L. R. A. 626; *Keen* v. *Detroit Ry. Co.*, 123 Mich. 247; *C. B. & Q.* v. *Griffin*, 68 Ill. 499; *DeLucas* v. *Railroad Co.*, 38 La. Ann. 930; *Mosher* v. *St. Louis, etc., Co.*, 127 U. S. 390; *Brown* v. *R. Ry. Co.*, 90 N. W. Rep. 290; *Townsend* v. *N. Y. C. & H. R. R. Co.*, 56 N. Y. 295; *Frederick* v. *M. H. & O. R. R. Co.*, 37 Mich. 346; *Yorton* v. *Milwaukee, etc., Co.*, 54 Wis. 234.

Surely the Act of 1900 does not prevent a railway company from making reasonable regulations, requiring of passengers evidence of their right to ride under the Act. Otherwise, under said Act, it might be claimed that the company was obliged to issue blank transfers without any regulation, as to time, place or any conditions whatsoever, and that the passenger might demand such a transfer because the law did not expressly authorize the company to make such regulations.

The defendant's fifth prayer instructed the jury that if they found that the plaintiff had been requested to pay his fare or get off the car, and had been allowed a reasonable time to comply with the request, but had failed to do so, then if the car was stopped for the purpose of enforcing the request, a tender of the fare by the plaintiff or his friend at that time would not affect the right of the conductor to eject him. *Hutchinson on Carriers*, section 591A; *Ga. Southern & Fla. R. Co.* v. *Ashmore*, 88 Ga. 529; *State* v. *Knies et al.*, 32 N. J. 312; *Pease* v. *D. L. & W. R. R. Co.*, 101 N. J. 367; *Railroad Co.* v. *Skillman*, 39 Ohio, 454; *N. Chicago St. R. R. Co.* v. *Olds*, 40 Ill. App. 421; *Fetter on Carriers*, 785–6.

McSHERRY, C. J., delivered the opinion of the Court.

There are two controlling questions arising on this record and they are presented by the prayers submitted at the conclusion of the evidence. The bill of exceptions brings up for review only the rulings on the prayers. The first question is this : Was the trial Court right in ruling that a transfer delivered to the appellant by the conductor of the appellee's Lombard street line, was void after the expiration of the time limited on its face for its use ? The Court below held that the

transfer was void and accordingly granted the appellee's *second* prayer and rejected the appellant's *first* prayer. The second question is this : Was the conductor of the Wilkins avenue car upon which the appellant attempted to use the transfer, justified in ejecting the appellant when the latter refused to pay his fare and after the conductor had stopped the car in order to eject the appellant, though after the car had been stopped for that purpose a companion of the appellant offered to pay the fare? This question was answered by the trial Court in the affirmative by the granting of the defendant's *fifth* prayer. Besides the two controlling questions just stated there are some subsidiary inquiries which will be considered later on.

*First.* It appears that the appellant with two friends boarded a car of the appellee at the corner of Lombard and Carey streets in Baltimore about three-forty or three-forty-five on the afternoon of March the sixth, 1901. They paid their fares and asked for transfers to the Wilkins avenue line going south. The conductor gave the transfers as requested and punched the date, the hour three-fifty, and the transfer point, Gilmor and Lombard streets. The transfers were limited as to the time within which they could be used and the time thus limited was indicated by the punch marks which the conductor made. It is alleged by the appellant, and for the purposes of this discussion it will be assumed to be true, that no car passed south on Wilkin's avenue until after the time limited for the use of the transfer had expired. By the Act of *Assembly of 1900, chapter 313*, the street car company of Baltimore City is required to issue transfers The first proviso in that enactment reads : "Provided, that such company shall give a free transfer, when the same shall be requested upon the payment of each cash fare, which transfer shall be good at all points of intersection of lines of said railway for a continuous ride." The appellant and his friends boarded the first car going south on the Wilkin's avenue line and presented the transfers. The time within which they could be used had then elapsed and the conductor refused to to take them. He demanded the pay-

ment of the regular fare. This was refused and the car was stopped and the conductor went in search of a policeman. When the conductor returned with a policeman and re-entered the car he requested the appellant and his companions to get off the car. This they refused to do and one of them offered to pay the fare which the appellant alleges the conductor refused to receive. According to the appellant's testimony the conductor grabbed the appellant viciously by the shoulders and shoved him violently out of the door of the car and up against the heavy metal controller severely hurting his left arm. The fare was again tendered by the appellant's companions and after much parley was accepted and the car was started and the appellant proceeded to his destination. The policeman flatly contradicted the statement of the appellant with respect to the alleged use of force.

It has been insisted by the appellant against whom the jury rendered a verdict and against whom a judgment for costs was entered, that the appellee company has no authority to limit the time within which a transfer must be used. We cannot accede to this contention. Whilst the *Act of 1900, ch. 313,* contains no specific provision declaring for what length of time the transfer shall be good, it is obvious that it does not contemplate that no reasonable regulation shall be made upon the subject. In the nature of the case, regard being had to the character and the magnitude of the business of conveying on street cars hundreds of thousands of passengers, it would seem to be a very proper precaution for the company to protect itself against imposition by affixing to the transfers, which it is required to issue, a limit beyond which they should not be available for use. When thus limited they are void and do not entitle the holder to ride on the cars after the expiration of the time specified by the punch marks. The statute makes the transfers good for a *continuous* ride. That language would seem to exclude the notion that there can be no time limit fixed. A continuous ride does not mean a ride interrupted by a considerable interval of time. If the time within which the transfer may be used expires by reason of the fail-

ure of the company to run its cars frequently enough, that fact does not make the transfer good or authorize a conductor to honor it.   In such circumstances it is the plain duty of the passenger to pay his fare ; but he is not without remedy.   If by the company's fault the transfer expires before the holder has had an opportunity to use it and in consequence he is required to pay and does pay his fare, he would have his action against the company.   But if it were held that in spite of the expiration of the transfer the conductor was still obliged to accept it, the company would be exposed to flagrant imposition without any means of protecting itself.   The transfer, like a railroad company's ticket, is the evidence of the passenger's right to ride.   *Hardesty* v. *U. Rys. & E. Co.*, 94 Md. 661; *Stocksdale* v. *W. M. R. R. Co.*, 83 Md. 245; *Blocher* v. *B. & O. R. R. Co.*, 27 Md. 277.   If the transfer, like the ticket, is void on it face it is not a token of the holder's right to be transported on the carrier's conveyance.   In *P. W. & B. R. R. Co.* v. *Rice*, 64 Md. 63, the liability of the company was placed upon the ground that the ticket was apparently good on its face.   This is distinctly pointed out in *W. M. R. R. Co.* v. *Stocksdale, supra*.   In the case at bar the transfer was void on its face when the appellant attempted to use it.   It, therefore, did not entitle him to ride on the Wilkin's avenue car, and the conductor was justified in demanding the appellant's fare, and upon the refusal of the latter to pay, the conductor was warranted in ejecting him.   There was consequently no error committed in rejecting the appellant's *first* prayer and in granting the appellee's *second* prayer.   The appellee's *third* and *fourth* prayers were also properly granted.   The legal propositions which they embody are fully sustained by what has been said thus far in this judgment.

*Secondly.*   Both upon authority and principle it is clear that when the conductor has given the passenger a reasonable time and opportunity to pay the fare and the passenger has persistently refused to comply, and the conductor has begun the process of expulsion by stopping the car or by applying force to the passenger, when necessary, "the passenger thereupon for-

feits his rights as a passenger, and his ejection may be completed even though he may thereafter tender the performance demanded." *Hutchinson on Carriers*, sec. 591A. This doctrine is supported by many adjudged cases. *Geo. S. & F. R. Co.* v. *Asmore*, 88 Ga. 529; s. c., 16 L. R. A. 53, and notes; 5 *Am. & Eng. Ency. L.* (2nd ed.), 597, note 1. There was, consequently, no error committed in granting the appellee's *fifth* prayer.

The appellant's *third* prayer related to punitive damages. It was rejected. The jury having decided that the appellant was not entitled to recover any damages at all it becomes unnecessary to consider whether the prayer correctly defined the measure of exemplary damages.

What we have said in treating of the appellee's *second* prayer is all that is required to show that the Court was entirely right in overruling the appellant's special exception to that prayer.

Finding no errors in the record the judgment will be affirmed, and it is so ordered.

*Judgment affirmed with costs above and below.*

(Decided June 29th, 1903.)