## CAPITAL TRACTION COMPANY *v.* BRINLEY.*

---

STREET RAILROADS; TRANSFERS; PASSENGERS; TRESPASSERS; EVIDENCE.

1. A street railway passenger holding a transfer, and the conductor to whom it is presented, are bound by what appears on the face of the transfer; and if a mistake has been made by the conductor issuing the transfer, the passenger has his right of action therefor against the company. (Following *Shortsleeves* v. *Capital Traction Co.* 28 App. D. C. 365.)

2. Where a passenger of a street railway company, holding an overdue transfer, which the conductor to whom he presents it refuses to ac-

*Carriers—Defective Transfer Ticket.*—For cases passing upon the rights and duties of passenger receiving defective street car transfer, see notes to *Little Rock R. & Electric Co.* v. *Goerner,* 7 L.R.A.(N.S.) 97, and *Montgomery Traction Co.* v. *Fitzpatrick,* 9 L.R.A.(N.S.) 851

*Ejection of Passenger—Tender of Fare to Prevent.*—For cases passing upon the sufficiency of tender of fare to prevent ejection, see note to *Kirk* v. *Seattle Electric Co.* 31 L.R.A.(N.S.) 991.

cept, persists in declining to pay his fare until after the conductor has rung his bell and called upon the motorman to assist in ejecting him, and the car has been stopped for that purpose, the passenger becomes a trespasser, and his ejection may be completed even if he then offers to pay his fare.     (Citing *Shortsleeves* v. *Capital Traction Co. supra.*)

3. Where, in an action by a former passenger of a street railway company against the company for his alleged unlawful ejection from one of the defendant's cars, it is claimed by the plaintiff that he presented an overdue transfer in good faith and within ten minutes after the car had reached the transfer point, while the company contends that it was not presented until over half an hour after the car reached that point, the regularly kept transportation records of the company, offered by it, are admissible in evidence to show that twenty-six cars passed the transfer point between the time the car on which the plaintiff was riding reached that point and the time he boarded the car from which he was ejected.

·No. 2761.  Submitted March 2, 1915.  Decided April 5, 1915.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action for the alleged wrongful ejection of the plaintiff from one of the defendant's street cars.                    *Reversed.*

The COURT in the opinion stated the facts as follows:

Appeal from a judgment for the plaintiff, Fohl C. Brinley, in the supreme court of the District in an action for the alleged wrongful ejection of the plaintiff from one of the defendant's street cars.

Shortly before 6 o'clock in the evening of April 7th, 1913, the plaintiff boarded one of defendant's cars at Fourteenth street and Pennsylvania avenue, the terminus of the car being Fourteenth street and Park road.  As he desired to be transported on Fourteenth street north of Park road he obtained a transfer which, according to its terms, was good from point of issue in the direction indicated until the time canceled; in this instance, until 6: 20.  The transfer also contained the following:  "Passengers are required to see that time punched

is correct and accept transfer subject to company's rules and as not transferable or giving stop-over privileges." .

· Plaintiff's evidence tended to show that when the car reached the point of transfer, that is, Fourteenth street and Park road, plaintiff got off and went to a house one street north, where he transacted some business, after which he returned to the transfer point (having consumed in all, according to his estimate, about ten minutes time) and boarded a north-bound, pay-within car. He handed the transfer to the conductor and sat down. The conductor then said: "Your transfer is overdue; it's no good; it's out of date." Plaintiff replied: "No, I guess it's all right; I don't. think it's overdue." The conductor, insisting that the transfer was overdue, rang the bell and the car stopped at Fourteenth and Monroe streets. In the meantime the conductor had called the motorman back and had informed the plaintiff that he would have to get off the car. The plaintiff jumped up and said, "Well, I will give you another fare rather than. have any trouble and be put off;" but the conductor would not then receive any fare. Later on in his testimony plaintiff said that he "offered to pay his fare between Park road and Monroe street when the conductor was contesting his transfer; *when the motorman came back at the call of the conductor,* the plaintiff jumped up and said, 'Very well, I will pay you another fare rather than be put off.' * * * It was just about the time the car stopped at Monroe street that he offered to pay his fare; it was after the car stopped at Monroe street that the conductor called the motorman back, *and just before the motorman got to where conductor and plaintiff were, plaintiff offered to pay his fare;* when he jumped up and offered to pay his fare, the car had stopped at Monroe street." Plaintiff did not at any time look at the time limit punched on his transfer. A witness for the plaintiff testified that he heard the plaintiff and conductor arguing over the terms of the transfer, and that finally "the conductor pulled the bell and called the motorman, and the motorman came back; just before the motorman reached plaintiff, the conductor put both hands on plaintiff's shoulder and said, 'Well, you will

get off, the transfer is no good;' and the plaintiff replied, 'Why, it is good, and *why should I pay another fare;' by that time the motorman was possibly two seats from plaintiff and conductor,* and the conductor caught hold of plaintiff's arm, the latter started to rise from his seat, and put his hand in his right vest pocket, and said, 'Rather than be put off the car, I will pay you another fare,' but the conductor replied, 'You won't pay me any fare,' and while he did not push the plaintiff, he followed him around with his hand until plaintiff stepped from the car; this occurred at about thirty-four or thirty-five minutes past 6."

It is conceded that the transfer was overdue, and it is not contended that excessive force was employed in ejecting plaintiff. According to the evidence for the defendant, the Fourteenth street car from which plaintiff alighted reached the point of transfer at about 6 o'clock. Its evidence further tended to show that the conductor to whom the transfer was presented made repeated unsuccessful efforts to induce the plaintiff to pay his fare before resorting to the extreme measure of putting him off the car. The defendant offered to show, from regularly kept transportation records, that twenty-six cars passed the transfer point between the car from which plaintiff alighted and the car from which he was ejected. This offer was rejected and an exception noted.

At the close of the evidence counsel for the defendant moved the court for an instructed verdict, which motion was overruled and an exception noted. Thereupon the court instructed the jury that if the plaintiff, when he offered the void transfer, was acting in good faith, it was the duty of the conductor, after informing him that the transfer was not good, to give him a reasonable time in which to pay his fare before putting him off. Among other things the court said: "If all that time he (plaintiff) was acting in good faith, honestly thinking his transfer was good, and the conductor insisted on his side that it was not good, *and then called the motorman back to help him eject the passenger,* who said, 'Why, I do not want any trouble; I will pay my fare rather than be put off,' all the while acting

as an honest man in good faith, it would be the duty of the
conductor in those circumstances to accept his fare, and not
put him off. That is the case as the plaintiff tries to show you
on the evidence. * * * *The plaintiff says that as he saw
the motorman coming back* he tried to reach his vest pocket,
and said, 'I will pay the fare rather than have any trouble,'
and the other passengers said the same thing, that that did
occur." In response to a question from a juror the court again
stated the issue as follows: "The question is whether he (plain-
tiff) offered to pay his fare *before he was put off.* If he did
offer to pay it, they had no right to put him off, no matter
about the transfer." To this portion of the charge the defend-
ant excepted.

*Mr. Frank J. Hogan,* for the appellant, in his brief, cited:
*Abra Silver Min. Co.* v. *United States,* 175 U. S. 423; *Ætna
Ins. Co.* v. *Weide,* 9 Wall. 677; *Note to Com.* v. *Power,* 41
Am. Dec. 465; *American Surety Co.* v. *Pauly,* 170 U. S. 133;
*Atchison, T. & S. F. R. Co.* v. *Dwelle,* 44 Kan. 394; *B. & O.
S. W. R. Co.* v. *Evans* (Ind.) 82 N. E. 773; *Bates* v. *Preble,*
151 U. S. 149; *Beck* v. *Quincy,* 129 Mo. App. 7; *Behr* v. *Erie
R. Co.* 69 App. Div. 416; *Berkleheimer* v. *Joline,* 113 N. Y.
S. 921; *Bradshaw* v. *South Boston R. Co.* 135 Mass. 407, 46
A. R. 481; *Bright* v. *Young,* 56 Ala. 112, 116, 117; *Brown*
v. *Rapid R. Co.* 134 Mich. 591; *Callaway* v. *Mellett,* 15 Ind.
App. 366; *Callihan* v. *Wash. Water Power Co.* 28 Wash. 154,
56 L.R.A. 772, 91 A. S. R. 820; *Cathey* v. *Missouri R. Co.*
(Tex.) 124 S. W. 217; *Chaffee* v. *United States,* 18 Wall. 516;
*Chin Wah* v. *United States* (Court of Appeals, District of Co-
lumbia), 43 W. L. R. 50–52; *Cincinnati R. Co.* v. *Skillman,*
39 Ohio St. 444; *Clark* v. *Wilmington R. Co.* 91 N. C. 506,
49 A. R. 647; *Crowley* v. *Fitchburg St. R. Co.* 185 Mass. 279;
*Dixon* v. *New England R. Co.* 179 Mass. 242; *Donovan* v. *Bos-
ton R. Co.* 158 Mass. 450; *Duke* v. *Metropolitan St. R. Co.*
166 Mo. App. 121; 4 Elliott, Railroads, § 1594; *Elliott* v.
*Southern Pac. Co.* 145 Cal. 441, 68 L.R.A. 393; *Firemen's*

*Ins. Co.* v. *Seaboard Air Line R. Co.* 138 N. C. 42, 107 A. S.
R. 517; *Freeman* v. *Costley* (Tex. Civ. App.), 124 S. W. 458;
*Freidenrich* v. *B. & O. R. Co.* 53 Md. 201; *Fulton* v. *Grand
Trunk R. Co.* 17 U. C. Q. B. 428; *Galveston R. Co.* v. *Turner*
(Tex. Civ. App.) 23 S. W. 83; *Garrison* v. *United R. & Elec.
Co.* 97 Md. 347, 99 A. S. R. 452; *Georgia R. Co.* v. *Davis,* 6
Ga. App. 645; *Georgia Southern R. Co.* v. *Asmore,* 88 Ga. 529,
16 L.R.A. 53; *Gorman* v. *Southern Pac. Co.* 97 Cal. 1; *Gould*
v. *Chicago R. Co.* 18 Fed. 155; *Gurley* v. *McLennan,* 17 App.
D. C. 170, 172, 173, 175, 176, 177–180; *Hanley* v. *Brooklyn
Hts. R. Co.* 110 App. Div. 429; *Harrison* v. *Fink,* 42 Fed.
787; 1 Harvard Law Review, 20; "Tickets;" *Hibbard* v. *New
York R. Co.* 15 N. Y. 455; *Hoffbauer* v. *Delhi & N. W. R. Co.*
52 Iowa, 342, 35 A. R. 278; *Hornesby* v. *Georgia R. & Elec.
Co.* 120 Ga. 913; *Hufford* v. *Grand Rapids R. Co.* 53 Mich.
118; Hutchinson, Carr. §§ 574, 580, 1085; *Illinois Cent. R.
Co.* v. *Bauer,* 66 Ill. App. 124; *Illinois Cent. R. Co.* v. *Jackson,* 117 Ky. 900; *Iowa* v. *Patrick Brady* (1896 Ia.), 36
L.R.A. 693, 695–697; *Jones* v. *Omaha St. R. Co.* 95 Neb.
798; *Kansas City R. Co.* v. *Foster,* 134 Ala. 244, 92 A. S. R.
25; *Kansas City R. Co.* v. *Holden,* 66 Ark. 602; *Keen* v.
*Detroit Elec. R. Co.* 123 Mich. 247; *Kiley* v. *Chicago St. R.
Co.* 189 Ill. 384, 52 L.R.A. 626, 82 A. S. R. 460; *Kirk* v.
*Seattle Elec. Co.* 58 Wash. 283, 109 Pac. 604; *Little Rock R.
& Elec. Co.* v. *Goerner* (Kansas Supreme Court, 1906), 95 S.
W. 1007; *Loeb* v. *Huddleston,* 105 Ala. 257, 261; *Louisville
R. Co.* v. *Coltengim* (Kentucky Supreme Court), 104 S. W.
280; *Louisville R. Co.* v. *Daniel,* 122 Ky. 256, 3 L.R.A.(N.S.)
1190; *Louisville R. Co.* v. *Harris,* 9 Lea, 180, 42 A. R. 672;
*Louisville R. Co.* v. *Klyman,* 108 Tenn. 304, 56 L.R.A. 769,
91 A. S. R. 755; *Loy* v. *Northern Pac. R. Co.* 68 Wash. 33;
*McCoul* v. *LeKamp,* 2 Wheat. 111; *McDonald* v. *Central R.
Co.* 72 N. J. L. 280; *McGhee* v. *Reynolds,* 117 Ala. 413; *McKay* v. *Ohio River R. Co.* 34 W. Va. 65; *Mason* v. *Seaboard
Air Line R. Co.* 159 N. C. 183; *Metropolitan R. Co.* v. *Collins,*
1 App. D. C. 383; *Mims* v. *Stertevant,* 18 Ala. 359, 364;
*Missouri R. Co.* v. *Elliott,* 102 Fed. 96 (C. C. A.), affirmed,

184 U. S. 695; *Missouri R. Co.* v. *Smith,* 152 Fed. 608 (C. C. A.), 10 Ann. Cas. 939; *Monnier* v. *New York Cent. R. Co.* 175 N. Y. 281; *Montgomery Traction Co.* v. *Fitzpatrick* (Ala.) 43 So. 136; *Morse* v. *Southern R. Co.* 102 Ga. 308; *Muldowney* v. *Pittsburgh Traction Co.* 8 Pa. Super. Ct. 335; *Mullins* v. *Illinois C. R. Co.* 93 Miss. 184, 13 A. S. R. 542; *Nelson* v. *Long Island R. Co.* 7 Hun, 140; *Nicholson* v. *Brooklyn Heights R. Co.* 118 App. Div. 13; *Norman* v. *East Carolina R. Co.* (N. C.) 77 S. E. 345; *Northern R. Co.* v. *O'Connor,* 76 Md. 207; *O'Brien* v. *Boston & W. R. Co.* 15 Gray, 20, 77 A. D. 347; *O'Brien* v. *New York C. & H. R. R. Co.* 80 N. Y. 236; *Ogdensburg & L. C. R. Co.* v. *Pratt,* 22 Wall. 123; *Owings* v. *Speed,* 5 Wheat. 420; *Pease* v. *D. L. & W. R. Co.* 101 N. Y. 367, 54 A. R. 699; *Pennsylvania R. Co.* v. *Perry,* 55 N. J. L. 551; *Pennsylvania R. Co.* v. *Wabash R. Co.* 157 U. S. 225; *People* v. *Jillson,* 3 Park. Crim. 234 (N. Y. Sup. Ct. Genl. Term); *Petrie* v. *Pennsylvania R. Co.* 42 N. J. L. 449; *Phillips* v. *Atlantic Coast Line R. Co.* 90 S. C. 187; *Pickens* v. *Richmond R. Co.* 104 N. C. 312; *Pittsburgh R. Co.* v. *Daniels,* 90 Ill. App. 154; *Poulin* v. *Canadian Pac. R. Co.* 52 Fed. 197 (C. C. A.); *Republic Fire Ins. Co.* v. *Weide,* 14 Wall. 375; *Rogers* v. *Atlantic City R. Co.* 57 N. J. L. 703; *Rubinger* v. *New York R. Co.* 144 N. Y. S. 765; *Runkle* v. *Burnham,* 153 U. S. 216; *St. Louis R. Co.* v. *Ramsay,* 96 Ark. 37; *St. Louis R. Co.* v. *Sutton,* 169 Ala. 389, 404–409, 23 Ann. Cas. 372; *San Antonio R. Co.* v. *Newman,* 17 Tex. Civ. App. 606; *States* v. *Quincy R. Co.* 125 Mo. App. 334; *Shelton* v. *Erie R. Co.* 73 N. J. L. 558; *Shortsleeves* v. *Capital Traction Co.* 28 App. D. C. 365; *Smith* v. *Collins,* 94 Ala. 394, 406; *Spiess* v. *Erie R. Co.* 71 N. J. L. 90; *Slate* v. *Campbell,* 32 N. J. L. 309; *State* v. *Overton,* 24 N. J. L. 435; *Taylor* v. *Sparton R. & Elec. Co.* (South Carolina Supreme Court, July 16, 1914), 82 S. E. 404; *Texas, etc., R. Co.* v. *Bond,* 62 Tex. 442, 50 A. R. 532; *Thomas* v. *Geldhart,* 20 N. B. 95; *Townsend* v. *New York C. R. Co.* 56 N. Y. 300; *United States* v. *Stone,* 106 U. S. 525; *Van Dusan* v. *Grand Trunk R. Co.* 97 Mich. 439; *Weber* v. *Rochester St. R. Co.* 145 App. Div. 84;

*Weber* v. *Southern R. Co.* 65 S. C. 356, 378; *Western Md. R. Co.* v. *Stockdale,* 83 Md. 245.

*Mr. Wm. J. Neale, Mr. James N. England, Mr. Thos. W. Bramhall,* and *Mr. Frank J. Werzinger,* for the appellee:

1. In *Shortsleeves* v. *Capital Traction Co.* 28 App. D. C. 365, there was no question of good faith; there was an absolute attempt to defraud. The passenger knew that his transfer was absolutely void at the point where he boarded the car, and his actions warranted the court in so holding as a matter of law. In the case at bar the plaintiff testified "he did not at any time look at the time limit punched on his transfer."

2. The authorities cited in appellant's brief we do not care to answer further than to invite attention to the fact that they deal either with cases where the right to use invalid transfers as the sole medium for the payment of fares or where the offer to use invalid transfers constituted fraud *per se,* thereby forfeiting any rights to become a passenger, and constituting the plaintiffs trespassers *per se,* or cases of similar nature.

*Mr. Justice* ROBB delivered the opinion of the Court:

It is conceded that plaintiff's transfer was void when presented. This the plaintiff was bound to have known, and the conductor to whom it was presented, in the nature of things and under the reasonable regulations of his company, was bound by what appeared on the face of the transfer. If a mistake had been made (and here it does not even appear that one was made) by the conductor issuing the transfer, the plaintiff would have had his right of action therefor against the company. *Shortsleeves* v. *Capital Traction Co.* 28 App. D. C. 365, 8 L.R.A.(N.S.) 287; *Pouilin* v. *Canadian P. R. Co.* 17 L.R.A. 800, 3 C. C. A. 23, 6 U. S. App. 298, 52 Fed. 197; *Bradshaw* v. *South Boston R. Co.* 135 Mass. 407, 46 Am. Rep. 481; *Stockdale's Case,* 83 Md. 245, 34 Atl. 880; *Hufford* v. *Grand Rapids & I. R. Co.* 53 Mich. 118, 18 N. W. 580, 8 Am. Neg.

Cas. 430; *Monnier* v. *New York C. & H. R. R. Co.* 175 N. Y. 281, 62 L.R.A. 357, 96 Am. St. Rep. 619, 67 N. E. 569, 14 Am. Neg. Rep. 423; *Shelton* v. *Erie R. Co.* 73 N. J. L. 558, 9 L.R.A.(N.S.) 727, 118 Am. St. Rep. 704, 66 Atl. 403, 9 Ann. Cas. 883.

It is the business and duty of this class of common carriers to transport passengers for hire, and it is the privilege of the public to be so transported. Realizing the proneness of the travelling public to carelessness, the courts have adopted the very reasonable rule that if a passenger tenders a ticket void on its face, he must be given a reasonable opportunity to pay lawful fare before he may be considered a trespasser. In other words, the conductor, at least in the absence of convincing evidence to the contrary, may not assume that he is acting in bad faith until he has been informed that his ticket is not good and has failed, within a reasonable time, to pay his fare. But, after notice, he must seasonably elect whether he will pay his fare and receive the privileges of a passenger, or leave the car as a trespasser. "And while there is some contrariety of opinion respecting the effect of a subsequent tender of compliance, the better and prevailing rule is that, when the refusal is wilful, persistent, or capricious, or proceeds from a fraudulent purpose to evade paying for transportation to which he knows he is not otherwise entitled, the passenger cannot,    *    *    *    after the process of ejection has begun, entitle himself to transportation and render the completion of the ejection wrongful." *Missouri, K. & T. R. Co.* v. *Smith,* 81 C. C. A. 598, 152 Fed. 608, 10, Ann. Cas. 939. In that case Judge Van Devanter now Justice Van Devanter of the Supreme Court, wrote the opinion for the circuit court of appeals. It appeared that after the conductor had given the signal for the train to stop for the purpose of ejecting the plaintiff, a third person offered to pay plaintiff's fare. This offer the court ruled did not operate to render the *completion* of plaintiff's ejection wrongful. In *Garrison* v. *United R. & Electric Co.* 97 Md. 347, 353, 99 Am. St. Rep. 452, 55 Atl. 371, 14 Am. Neg. Rep. 314, the court said: "In the case at bar the transfer was void

on its face when the appellant attempted to use it. It therefore did not entitle him to ride on the Wilkins avenue car, and the conductor was justified in demanding the appellant's fare, and upon the refusal of the latter to pay, the conductor was warranted in ejecting him.   *   *   *   Both upon authority and principle it is clear that when the conductor has given the passenger a reasonable time and opportunity to pay the fare, and the passenger has persistently refused to comply, and the conductor has begun the process of expulsion by stopping the car or by applying force to the passenger when necessary, 'the passenger thereupon forfeits his rights as a passenger, and his ejection may be completed even though he may thereafter tender the performance demanded.' "   See also *Shortsleeves* v. *Capital Traction Co.* 28 App. D. C. 365, 8 L.R.A.(N.S.) 287; *Shelton* v. *Erie R. Co.* 73 N. J. L. 558, 9 L.R.A.(N.S.) 727, 118 Am. St. Rep. 704, 66 Atl. 403, 9 Ann. Cas. 883; *Cincinnati, S. & C. R. Co.* v. *Skillman,* 39 Ohio St. 444, 8 Am. Neg. Cas. 571; *O'Brien* v. *New York C. & H. R. R. Co.* 80 N. Y. 236.   The reasonableness of the above rule is apparent upon a moment's reflection. The passenger, by presenting a void transfer, becomes prima facie a trespasser, for the obvious reason that his right to be upon the car as a passenger is dependent upon his proffer of proper fare. If he fails or declines within a reasonable time to pay his fare, after the invalidity of his transfer has been brought to his attention, he becomes in fact a trespasser, and the conductor may treat him as such. Deliberately having assumed the status of a trespasser, he is thereafter in no position to complain because he is treated accordingly. To permit him, after he discovers that his wilfulness has resulted in the commencement of the process of ejection, to resume the status of a passenger by the tender of his fare, would invite attempts at fraud and greatly interfere with the orderly and expeditious running of cars.

In the light of the foregoing, the defendant's motion for a directed verdict should have been granted, since, according to the plaintiff's evidence, he persisted in his failure or refusal to pay his fare until the conductor had rung the bell and called

upon the motorman to assist in ejecting him. Indeed, the conclusion is irresistible from the plaintiff's evidence that actually the car had been stopped for the purpose of his ejection before he offered to pay his fare, for he testifies, as does his witness, that the motorman had started back before he (plaintiff) offered to pay. Of course, the motorman would not have started back while his car was in motion. That such was the purport of plaintiff's evidence is apparent from the charge of the learned trial justice. The plaintiff had then voluntarily assumed the status of a trespasser, and his offer to pay his fare came too late. His own evidence leaves no room for doubt that he was afforded ample opportunity to pay his fare before the conductor fixed his status as a trespasser by ringing the bell and calling upon the motorman to assist in ejecting him.

We think the defendant should have been permitted to show the number of cars that passed between the time the plaintiff reached the transfer point and the time when he boarded the car from which he was ejected, and that its regularly kept transportation records were competent for that purpose. *St. Louis & S. F. R. Co.* v. *Sutton,* 169 Ala. 389, 55 So. 989, Ann. Cas. 1912 B, 366; *Louisville & N. R. Co.* v. *Daniel,* 122 Ky. 256, 3 L.R.A.(N.S.) 1190, 91 S. W. 691; *Donovan* v. *Boston & M. R. Co.* 158 Mass. 450, 33 N. E. 583; *Firemen's Ins. Co.* v. *Seaboard Air Line R. Co.* 138 N. C. 42, 107 Am. St. Rep. 517, 50 S. E. 452. The plaintiff contended that he presented the void transfer in good faith and within about ten minutes after he reached the transfer point. The conductor who issued the transfer testified that his car reached the transfer point at about 6 o'clock, and it is conceded that it was not presented until about 6:35. Evidence that twenty-six cars passed this point after the plaintiff reached it tends to support the statement of the conductor issuing the transfer, and has some bearing upon the plaintiff's contention of good faith.

The judgment will be reversed, with costs, and the cause remanded for a new trial. *Slocum* v. *New York L. Ins. Co.* 228 U. S. 364, 57 L. ed. 879, 33 Sup. Ct. Rep. 523, Ann. Cas. 1914D, 1029; *Pedersen* v. *Delaware, L. & W. R. Co.* 229 U. S.

146, 57 L. ed. 1125, 33 Sup. Ct. Rep. 648, Ann. Cas. 1914C, 153, 3 N. C. C. A. 779.                    *Reversed.*