Fields v. Walker et al.

---

## FIELDS *vs.* WALKER ET AL.

1. A plea to the jurisdiction, when pleaded in a court of general jurisdiction, is bad on demurrer, if it does not point out what other court has jurisdiction, and conclude with the prayer "whether the court will or ought to take further cognizance of the plea aforesaid."

2. Matter amounting to the plea of *res adjudicata* cannot be pleaded in abatement.

3. Where the claimant of slaves institutes proceedings for their recovery under the act of Congress of February 12, 1793, as fugitives from his service, and obtains the certificate of the justices in his favor, as required by the act, the proceedings can only affect those who are arrested by the warrant of the justice and brought before him; and although the certificate declares that certain other persons, children of a woman who was arrested and remanded as a fugitive slave, are also slaves, and owe service to the claimant, yet, as to them, the sentence is a nullity.

4. In a suit for freedom under the statute of this State, the trial being had on one issue as to all the petitioners, evidence of what a deceased witness testified on a former proceeding under the act of Congress of 1793, to which only a portion of the petitioners were parties, is not admissible.

5. Children born in this State, of a negro woman who is a fugitive slave, cannot be regarded as fugitive slaves, or slaves which have escaped from service in another State, within the meaning of the constitution of the United States, and of the act of Congress of 1793.

6. Appearance and consent cannot give jurisdiction.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. ANDREW B. MOORE.

John Walker and the other defendants in error, who are his brothers and sister, filed their petition for freedom, under the statute of this State, against the appellant, in the Circuit Court of Tuskaloosa County ; setting forth that they are free persons of color, the children of Milley Walker, who is a free woman of color ; that they were born in this State, and under its laws are entitled to be free, their mother being free at the time of their birth ; that they are unjustly held in bondage, and claimed as slaves, by the appellant. They pray that the question of their freedom may be tried as the statute directs ; that they be declared free by the judgment of the court, and released from their present bondage by its order. The petition also sets out the proceedings on a former petition for freedom, exhibited in the Circuit Court of Tuskaloosa County, by Milley Walker, the mother of petitioners, for herself and the present petitioners, against one Richard Jones, who held them in bondage and slavery, on which, by the finding of a jury, and the judgment of the court, they were declared free persons of color, at the September term, 1833, of said court. The appellant in this case was not a party to those proceedings.

To this petition, Fields, the appellant, appeared, and pleaded:

1. That said petitioners are his slaves, and owe him service as such, and were his slaves at and long before the petition was filed.

2. For further plea, he says " that this honorable court cannot rightfully take jurisdiction of this cause, and have and determine the matters alleged in said petition, because he says, that, heretofore, to wit: on the 29th day of November, 1848, the petitioners were seized and arrested, in the State of Alabama, by the defendant (then and now a resident citizen of the State of Virginia) as his slaves, and owing him service as such, and as such slaves they were taken before three magistrates, who were acting justices of the peace for the County of Tuskaloosa ; and under the act of Congress passed the 12th day of February, 1793, entitled 'An act respecting fugitives from justice, and persons escaping from the service of their masters,' the defendant produced before said magistrates satisfactory

proof, that the petitioners were the slaves of said defendant, and had escaped from his service; whereupon the said magistrates executed and delivered to the defendant the certificate required to be made by said act of Congress, by said magistrates, that the said petitioners were slaves of the defendant, and owed him service as such. All which the said defendant is ready to verify by the certificate aforesaid."

The certificate referred to in the plea is in these words:

THE STATE OF ALABAMA, ⎱ Be it known that, on the 29th Tuskaloosa County. ⎰ day of November, 1848, Milley, and her children John, LeRoy and Priscilla, were arrested by virtue of a warrant issued by James L. Childress, a justice of the peace in and for said county, as fugitive slaves, and brought before us, James L. Childress, justice of the peace as aforesaid, and Frederick P. Hall and L. S. Skinner, two justices of said county, and claimed as slaves and owing service as such to Richard W. Fields of Brunswick county, in the State of Virginia; and after an investigation of two days, both parties represented by counsel, we were satisfied by the proof adduced before us, that the negroes, Milley and her children, Armistead, Eliza, John, LeRoy, Priscilla and Stephen, are slaves under the laws of the State of Virginia, from which State the said Milley fled, or was stolen, before the birth of her said children, and that said slaves owe service to Richard W. Fields of said State; and we hereby certify the same, that the said Richard W. Fields, or his legally authorized agent or attorney, may remove said slaves to the said State of Virginia, where he resides.— Given under our hands and seals, this 12th day of December, A. D., 1848."

(Signed,)        JAMES L. CHILDRESS, J. P. (*seal.*)

F. P. HALL, J. P. (*seal.*)

L. S. SKINNER, J. P. (*seal.*)

To the second plea of the defendant the petitioners filed a demurrer, in which there was a joinder by the defendant.

The defendant withdrew his first plea, by leave of the court, and against the objections of the counsel of the petitioners. The court sustained the demurrer to the second plea, and allowed the defendant to plead over. What plea was put in under this order, the record does not show. The issue was tried by a jury

which found for the petitioners, and judgment was rendered accordingly.

On the trial, a bill of exceptions was sealed at the instance of the counsel for the defendant, by which it appears that on the trial of the issue, the defendant proved the death of one Wyatt, who had testified on the proceedings before the justices under the act of Congress, and offered to prove what said Wyatt had sworn on that occasion; this was objected to by the counsel for the petitioners. The objection was sustained, and the defendant excepted.

The judgment of the court on the demurrer, and the exclusion of the testimony as set out in the bill of exceptions, are here assigned for error.

ORMOND & NICOLSON, for plaintiff in error:

The special plea in bar presents the naked question of the sufficiency of the certificate of the magistrates under the act of Congress of 1793. The certificate shows that the slaves were brought before the justices, upon an allegation of Fields, a resident citizen of Virginia, that they were his slaves, owed him service as such, and had escaped from his service. The jurisdiction of the magistrates, then, was complete, and their decision cannot be reviewed by any State court.—Jack v. Martin, 12 Wendell's R. 311 ; Same v. Same, 14 *ib.*; Prigg v. Pennsylvania, 16 Peters' R. 539. The plea is not a plea to the jurisdiction: it could not, in truth, have said that any other court had jurisdiction.—Rhea v. Headen, 3 Mass. 24, and cases cited in note.

When this case was before this court at a previous term, it was held, that the question of slavery *vel non* could not be tried under a writ of *habeas corpus*, and the court expressly disclaimed any intention of deciding this question. Yet the court below considered that this court had intimated that the Circuit Court could take jurisdiction and try this question, and for that cause decided the demurrer against the claimant. If there is any meaning in language, the openning paragraph of the opinion excludes any such idea; and it cannot be supposed that, after such an unequivocal disclaimer of any design of passing on the question, the court should afterwards, by indirection, have decided it. Not doubting, therefore, that this is an open question, we proceed to consider it.

The act of Congress of 1793 employs the term "fugitive from labor." The language of the constitution is, "No person held to service or labor in one State, under the laws thereof, escaping into another, shall," &c. The act of Congress was intended to make this constitutional provision effectual, not to limit or restrain it; nor could Congress, by any act, limit or restrain the concession made in the constitution to the slaveholding States. But, it is contended, the petitioners cannot be considered fugitives from the service of their master, because they never were in the State of Virginia, but were born in this State, their mother having run away from Virginia many years since. The question is to be settled by the true construction of the constitution. What was the intention of its framers? What did the southern States demand, and the northern States concede? The difficulty apprehended, and intended to be provided against, was, that, if the comity of nations was the master's only guaranty, he might not be permitted to reclaim his fugitive slave. To secure this, it is provided that, if a slave "escapes" into another State, he shall be delivered up, on demand of his owner. What is the meaning of this term, "escape?" In what sense is it employed? On the other side it is contended, that it must be literally and strictly construed, and that a slave cannot "escape" from a State in which he never was. We contend, that the organic law must be liberally construed, to effectuate the plain intention of the parties; that when the intention is clear, courts will put that construction on it which will give it that effect. The guaranty was, that, where A's slave was found in another State, and refused to return to his service, he should be delivered up to him. The term "escape" was used to negative the idea of his consent to the slave's going or remaining in another State.

It is contended, however, that "escape" implies an act of the will. But, if a slave is stolen, and carried across the line of the State, with or without his will, or, if an infant incapable of volition, is carried by its mother to another State, can it be possible that the constitution does not provide for these cases? Surely, the mischief intended to be remedied by the constitution was, that the southern slave-holder should not be molested in the recovery of his slave, by the laws or authorities of another State, in which he might be found. The only question would be,

Fields v. Walker et al.

whether he was in fact a slave, and the property of the person claiming him. If so, he had, in the sense of the constitution, escaped from his service, and would be, literally, a fugitive from the service of his master, if he refused to submit to his commands.

These cases show conclusively that the constitution should not be construed literally. Suppose the case of a stolen slave. How could the master show the consent of the slave to go? And in the case of the infant, "escape," literally, would be impossible. Yet who can doubt that these cases are within the spirit and intent of the law? As the mother of the slave in this case escaped from the service of her master, her children, following her condition, are fugitives from his service, precisely to the same extent she is, and covered by the spirit and meaning of the constitution and the act of Congress. In the construction of statutes, it has always been held, that a thing within the intention of its framers is as much within the statute as if it were within the letter, and that a thing within the letter is not within the statute, unless it is within the intention of the makers of it; and whenever the meaning of words is obscure or doubtful, the intention of the legislature must be resorted to, to find the meaning of the words.—6 Bacon's Abr., Title Statute, I, 5. How much more are these rules applicable to the organic law, which must, of necessity, be general in its terms. As, therefore, the clear and obvious intention was, to secure the slaveholder against interference on the part of the States, preventing the reclamation of his slave, such a construction must be put upon the law as will secure this end, without which the constitution never would have been assented to by the slave-holding States. This being the true construction, the court should have declined jurisdiction, as the decision of the tribunal created by Congress is paramount to all State law and authority.

The proof offered in the court below, of what a deceased witness testified on the trial before the justices, was improperly rejected, the necessary preliminary proof having been made. Whenever testimony is given upon oath, in a judicial proceeding in which the adverse litigant was a party, and had the opportunity to cross-examine, proof of what such witness swore may be made after his decease. All these conditions exist in this case, and the evidence, therefore, should have been received.—1

Green, Ev. §§ 163, 164, 165, 166. The trial before the justices was certainly a judicial proceeding; the court before which the trial was had was also one of peculiar and extraordinary jurisdiction, and one from whose decision there was no appeal.

E. W. PECK, *contra:*

I. The demurrer to the plea to the jurisdiction of the court was properly sustained, because: 1. The plea to the merits admitted the jurisdiction of the court. 2. The leave asked by the plaintiff to withdraw his plea to the merits admitted the jurisdiction of the court. 3. The defence attempted to be made by this plea, if available at all, should have been made on a plea to the action.—1 Chitty's Pl. top p. 444; 3 Mass. R. 24; 6 East 583.

The said plea is bad on the merits. It does not aver that the defendants owed the plaintiff service in the State of Virginia, or in any other State out of Alabama; nor does it aver that they were his slaves, and had escaped from his service in one State, and fled into another. It states that the magistrates certified, "that the said petitioners were the slaves of the said defendant, and owed him service as such, to-wit, on the 12th of December, 1848, at the county aforesaid": such certificate is wholly insufficient, and in no essential particular does it conform to the act of Congress. The plea does not aver that the defendants ever were in the State of Virginia, or in any other State than Alabama. It is wholly defective as a plea to the jurisdiction: it wants the certainty required by such pleas, and is deficient in substance. As a plea in bar, it is wholly defective and insufficient, because, as such, it should have averred that the issue was the same, and the cause identical. As a plea of *res adjudicata* it should have averred all that was necessary to show that the proceeding was within the act of Congress. The matter before the magistrates was, among other things, whether the alleged slaves were fugitives; here, the issue is simply, slavery *vel non.*

II. The certificate set out on oyer was a nullity. It does not show that the magistrates had jurisdiction. This should appear on the face of the certificate. In such cases, magistrates exercise a special and limited jurisdiction, and their proceedings must, therefore, show all that is necessary to sustain their juris-

diction.—Wise v. Withers, 3 Cranch 331, 337 ; Lamar v. The Comm'rs Court of Marshall Co., at this term. The intendment of law is, that courts of general jurisdiction, when they act, have jurisdiction; but with regard to inferior courts, or those of limited and special jurisdiction, those who claim any right or exemption under their proceedings are bound to show affirmatively that they had jurisdiction.—19 Johns. R. 33; 1 Saunders' R. 74, and notes.

III. The claimant of a slave, to avail himself of the constitution and laws of the United States, must bring himself within their plain and obvious meaning: the language employed will not be extended by construction.—18 Pick. R. 221. The constitution and act of Congress are confined to the case of a slave *escaping* from one State, and fleeing into another.—Prigg v. Com. Penn., 16 Peters' R. 628, 633; Jones v. Van Zant, 5 How. U. S. R. 228; Commonwealth v. Holloway, 2 Serg. & R. 305; *Ex parte* Simmons, 4 Wash. C. C. R. 396. The court will examine the alleged certificate, and must pronounce it valid or void, as it does or does not conform to the act of Congress.— *In re* Clarke, 9 Wendell's R. 212.

The case of Jack v. Martin, cited by plaintiff's counsel, is wholly unlike this. In that case, the act was passed for the express purpose of enabling a slave to sue out the writ named in it, to defeat the owner from carrying off the alleged slave under the act of Congress. It is an act of a free State. The statute under which this proceeding is had, is a general law, to enable persons claimed as slaves to try the question of slavery *vel non.* But the act of New York clearly shows that there must be an escape from one State, and a fleeing into another, which there was not in this case. The act of New York is unconstitutional; ours certainly is not.

IV. Jones had the defendants in his possession, claiming them as his slaves, as a purchaser for valuable consideration, for a period that barred the claim of Fields. When the petition for freedom was filed in 1832, Jones' title was not only adverse, but perfect, as against all the world except the defendants. Fields, then, could not have recovered them, by any proceedings against Jones. The defendants have overthrown the title of Jones, by the recovery in 1832; they cannot be in a worse condition by reason of that recovery, nor can Fields be in a better condition.

The defendants, then, are entitled to set up the title of Jones, and their recovery against him, against the present claim of Fields.—See the last paragraph of the opinion in Fields v. Walker, 18 Ala.

V. The offer to prove what the witness Wyatt swore on the examination before the magistrate, was properly rejected.— Gildersleeve v. Caraway, 10 Ala. 262; Melville v. Whiting, 7 Pick. R. 79.

LIGON, J.—It is insisted that the court erred in sustaining the demurrer to the second plea of the defendant in the court below.

This plea was evidently intended as a plea to the jurisdiction of the court, and must, therefore, be regarded a plea in abatement, since all pleas to the jurisdiction are pleas in abatement. In this aspect the plea is bad, both in its form and matter. In form, because it neither points out what other court has jurisdiction, nor does it conclude with the prayer, " whether the court will or ought to take further cognizance of the plea aforesaid," both of which are necessary in pleas to the jurisdiction, when pleaded in superior courts, or courts of general jurisdiction.— 3 Chit. Pl. 894; Rea v. Heyden, 3 Mass. 24; 1 Chit. Pl. 144; Mosely v. Hunter, 3 Iredell 403. The matter attempted to be set out in the plea, if available at all, amounts to the plea of *res adjudicata*, and as such should have been pleaded in bar, and not in abatement. For these reasons, we are of opinion there was no error in sustaining the demurrer.

The next error assigned arises out of the ruling of the court in relation to testimony offered by the defendant. It appears by the bill of exceptions, that, on the trial before the justices of the peace in November, 1848, had, as the certificate of said justices shows, under the act of Congress of February 12th, 1793, one Wyatt testified for the claimant of the slaves arrested under a warrant issued by James L. Childress, a justice of the peace, and that Fields the defendant in this suit was the claimant in that. It was further shown, that said Wyatt had departed this life before the trial in this case. The defendant, after showing the death of Wyatt, proposed to prove what he had sworn on the former trial. This was objected to by the counsel of the petitioners, and the objection was sustained by the court,

because the proceeding under the act of Congress was not such a trial as would authorize such proof to be made.

On an examination of the certificate of the justices, who presided on the arrest of Milley Walker and others, on the claim of Fields, the defendant in this suit, it appears that Milley, John, LeRoy and Priscilla were the parties brought before them on the warrant of arrest issued under the act of 1793, and claimed by Fields, as fugitives from service or labor, under that act, and that the trial then had related to the persons so arrested. If this trial were conclusive as to these, still it cannot be pretended that it could in anywise affect the rights of those of the present petitioners who were not so arrested. The petitioners in the present case are John, LeRoy, Stephen, Priscilla and Armistead Walker. Milley is not here a party, nor were Stephen and Armistead arrested on the warrant of the justice of the peace. The parties, therefore, are not the same; and for this reason, if no other, the testimony, as to what Wyatt deposed before the justices, was rightly excluded.

It is true that the certificate of the justices, after reciting a trial before them between Fields as claimant, and Milley, John, LeRoy and Priscilla, as parties arrested and brought before them, goes on to adjudge that these persons, as well as Armistead, Eliza and Stephen, are slaves under the laws of Virginia, and owe service to Fields, the claimant. But we apprehend that such a sentence, as to the three parties last named, cannot be supported, and that it is a nullity, inasmuch as the record does not show that they were before the court, or had any opportunity to defend against the claim. The court rendering the sentence is one of special jurisdiction, and no intendment can be indulged in favor of the regularity of its proceedings.

Of the parties who were not then before the justices, and who were consequently not concluded by their judgment, two are here petitioners for freedom; and as the trial appears to have been on one issue as to all the petitioners, evidence of what had been testified on a trial to which only a portion of them were parties, is not admissible.

Again : It does not appear that the proof was offered in reference alone to the two petitioners for freedom who appear to have been arrested and brought before the justices, but that it was offered generally as to all the parties; and when this is the

case, it matters little whether on separate issues it would have been good as to some of them. The court is not bound to separate it, but may reject the whole, and it will not be error.

There is, however, another reason why the testimony offered should not have been received, and that is, that the questions arising on the proceedings before the justices of the peace under the act of 1793, and those arising in this suit, are materially different.

The questions which the magistrates of the several States, under the third section of the act of 1793, are allowed to consider, are, 1st. Are the parties claimed held to labor, and do they owe service or labor to the claimant, under the laws of a different State from that in which they are arrested? 2d. Have they escaped from such service?

The evidence before the magistrate must be directed to these two points; and when it is shown by the claimant that the persons claimed are of African descent, and that, by the laws of the State from which the persons arrested are alleged to have escaped, such persons are allowed to be held in slavery, and that those claimed have been so held by the claimant, this will show that they owe him service in that State, and, on this branch of the inquiry, entitle him to the certificate required by the act of Congress. But it does not satisfy the demands of the second branch of the inquiry, on the existence of which, conjointly with this, the jurisdiction of the magistrate depends, viz., has the party escaped from such service in the State in which the owner resides?

The verb to *escape* is defined by Mr. Walker, "to fly, to avoid, to pass unobserved;" and the noun *escape*, " flight, the act of getting out of danger; *in law, violent or privy evasion out of lawful restraint*." The term " escape" presupposes a former confinement or abiding in a certain place or condition, out of which a party delivers himself by his own act, or is delivered by the act or aid of another with his concurrence. If the parties claimed in the case before the magistrates, under the act of 1793, are not shown to have escaped, in one of these senses of the term, from the service of the defendant in the State of Virginia, then it is clear that the magistrates had no jurisdiction, and their action in respect to these petitioners is not binding upon

them. If this is the case, then no testimony offered on that trial can affect them on this.

In the certificate of the justices it appears, that Milley, the mother of these petitioners, "*fled, or was stolen* from the State of Virginia, *before the birth of her said children.*"

Now let us inquire what is the condition of the children of Milley, all of whom, it appears, were born after she had escaped from the service of Fields, and fled out of the Commonwealth of Virginia. Are they fugitives, who have escaped from service or labor in another State, when they were never within the limits of that State, or subject to its laws? The mere statement of the proposition seems to suggest the answer, that they cannot be so regarded.

In the case of The Commonwealth v. Holloway, 2 Serg. & R. 305, the question was, whether the child of a fugitive slave, born in Pennsylvania, more than twelve months after she had escaped from Maryland, and resided in the former State, was bond or free. By the laws of Pennsylvania, all children born within her limits are free, irrespective of color; while by the laws of Maryland, the children of a slave mother are themselves slaves. The Supreme Court of Pennsylvania held, that the child was free, notwithstanding the bondage of the mother, and while the latter was readily surrendered under the act of 1793, the child was retained, because it was entitled to its freedom.

Our own court, at its present term, has held that, where a master who was indebted, and against whom judgments were obtained, carried his female slave to the State of Ohio, and there emancipated her ; and she, seven months after her emancipation under the laws of Ohio, brought forth a child in the State of Indiana, another free State, such child was absolutely free, although the mother, on her return to this State, would, under our statutes, be subject to the debts of the master, existing at the time she was taken from this State for the purpose of emancipation.—Union Bank v. Benham, at the present term.

These citations are made to show, that all the incidents of the mother's condition at the time of the birth of the child do not invariably attach to the offspring. In the former case, although the *status* of the mother was that of a fugitive slave, and her slavery, under the constitution of the United States and the acts of Congress, attached to her as well in Pennsylvania as in Ma-

ryland, and this could not be affected by any State legislation whatever, yet the child, being begotten and born in a free State, was entitled to the protection of its laws, and could in no just sense be said to have escaped from service in Maryland. In the latter, the mother of the child, although free in Ohio and Indiana, was made so by the act of a debtor, which, by our laws, is regarded as a fraud on the rights of his creditors, and consequently void as to them, should the slave thus emancipated return within the jurisdiction of this State. Yet, notwithstanding the mother's *status*, on her return to this State, was that of slavery, so far as the creditors of her former master are concerned, this incident of her condition did not attach to the child born in Indiana after her emancipation, although she brought it here with her.

So, in this case, notwithstanding the mother of the petitioners may be a fugitive slave who escaped from the service of her master in Virginia, yet the petitioners, although in this view of the case they would be slaves, because they were born of a slave mother in a State where slavery exists by law, cannot be regarded as *fugitives*, or slaves which have *escaped* from service in another State, within the meaning of the constitution of the United States, and the act of Congress of the 12th Feb. 1793.

By that act, the magistrates of the several States are vested with power and jurisdiction only over persons who have *escaped* from service or labor in one State, and have fled to another.— U. S. Statutes at large, vol. 1, ch. 7, p. 302-3-4.

It does not appear that the petitioners in this case can, in any just sense of that term, be said to have *escaped* from the service of Fields, in Virginia; and as to them, the proceedings before the justices of the peace in Tuscaloosa county are wholly without authority of law. As it is shown that Wyatt, the deceased witness, had been examined only in that proceeding, there was no error in excluding proof of what he then swore, from the jury, on the trial of this case in the court below, because the only matter which could lawfully arise on the trial before the justices, must relate to Milley Walker alone.

It is said, however, that the certificate of the justices shows that the parties appeared and contested the matter before them, and therefore they have submitted to their jurisdiction, and will not be allowed to repudiate it. We have seen that they had no

jurisdiction over the subject matter of any litigation which could arise between the parties to this record, on the question of service due from one to the other, and no consent could possibly bestow it upon them. But it is not true that the record of the justices proves the appearance before them of all these petitioners, and a contest with the defendant on that occasion. A part of them, with their mother, are said to have been heard by counsel, though not all. This, however, is a matter of small importance, as it could not have conferred jurisdiction.

The appellant in this case had no greater right to proceed against the children of Milley, who were born in this State, under the act of 1793, than he would have had to use that act for the recovery of slaves bequeathed to him here, while he was a resident of the State of Virginia. In either case, he might take possession of them peaceably, without any process whatever, wherever he could find them; and if they were withheld from him, the laws and process of this State were at his command to enforce his right, or, if the value was sufficient to give the Federal Courts jurisdiction, they too were open to him. But as the petitioners in this case had never escaped from labor or service in Virginia, they could not be proceeded against under the act of 1793.

There is no error in the record, and the judgment is affirmed.