[St. Louis & S. F. R. R. Co. v. Sutton.]

# St. Louis & S. F. R. R. Co. v. Sutton.

## Injury to Employee.

(Decided June 9, 1910.  Rehearing denied June 30, 1910.
55 South. 989.)

1. *Pleading; Plea in Abatement; Time of Filing; Courts.*—Where the action was against a railroad company for injuries to a servant brought in the city court of Birmingham, a plea of venue or personal privilege is a plea in abatement and unless filed within thirty days after service of the summons and complaint may be properly stricken in the exercise of the court's discretion under the Practice Act of said city court and under rule 12, Circuit Court Practice.

2. *Same; Waiver.*—Where the motion to strike was made as soon as the plea in abatement was amended, the fact that the court allowed the defendant to amend the plea which was filed after time, without objection by plaintiff did not preclude the court from striking it in the exercise of its discretion, or estop the plaintiff from making the motion to do so.

3. *Same; Filing; Time.*—Rule 10, Circuit Court Practice construed in connection with rule 12, does not mean that a defendant can plead in abatement before a judgment by default, if he has passed the time for pleading, and does not deprive the plaintiff of the right to move to strike such plea under rule 12, because filed after time for pleading.

4. *Master and Servant; Injury to Servant; Complaint.*—A count alleging a defective railway at or near the point where plaintiff was thrown or caused to fall from defendant's train, in an action against an employer for injury to his servant, is not fatally defective for failure to describe properly the particular defect.

5. *Same; Requisites.*—Counts alleging that while the plaintiff was engaged in the defendant's service and was on a certain train engaged in or about the defendant's business, he was thrown or caused to fall from a train, etc., is defective for a failure to charge that the plaintiff was injured while engaged in the performance of duties, he was employed to perform.

6. *Same; Evidence; Running Time Between Stations; Train Sheets.*—Where the railroad company' operated its train on telegraphic orders, the time of the departure of the train being telegraphed by the operator at the station it was leaving to the train dispatcher, and noted on a train sheet, such sheet was a record prepared by the employees of a railroad company in the ordinary course of their business, and was admissible as tending to show the actual running time of a train from which plaintiff was thrown and injured between the two telegraph stations where the injury occurred.

7. *Evidence; Secondary Evidence; Train Sheets.*—Where the plaintiff demanded in open court of defendant the production of its train

[St. Louis & S. F. R. R. Co. v. Sutton.]

sheets for a certain day showing the time of the departure of the train from certain stations, and the defendant failed to produce it, plaintiff could show by a witness who had seen the sheet that it showed fourteen minutes were consumed in operating a certain train between two certain stations named, the evidence being in sharp conflict as to the rate of speed at which the train was operated between such stations on a particular day.

8. *Trial; Objections After Answer.*—Objections to questions not made until after witness had answered may be properly overruled although counsel taking the objections stated that he had not understood the question.

9. *Appeal and Error; Harmless Error; Evidence.*—If it was error to allow a witness to answer a question objected to, it was cured by sustaining an objection to the answer.

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

Action by James R. Sutton, an employee, against the St. Louis & San Francisco Railroad Company, for injury. Judgment for plaintiff and the defendant appeals. Reversed and remanded.

CAMPBELL & JOHNSTON, for appellant. A plea to the jurisdiction is different from a plea in abatement in nature, form and office, and is in no sense properly embraced within the term pleas in abatement.—1 Chitty 243, 441; Andrews-Stephens on Pleading, 1894, and appendix note 2; 5 Mod. 146; Carth. 363; 1 Salk. 297; 139 Ala. 548. In order to take advantage of section 5 of the Practice Act, the plaintiff must claim a default or make a motion therefor before plea filed.—*Woolsey v. R. R. Co.,.* 28 Ala. 526; *Rhodes v. McFarland,* 43 Ala. 95; *Wagnon v. Turner,* 73 Ala. 197; *Ex parte Scudder Gale Gro. Co.,* 25 So. 44; *U. S. S. & S. Co. v. Weir,* 96 Ala. 396. By allowing the amendment the court pretermitted any question as to the plea being seasonably filed, especially where no objection is raised by the plaintiff.—*Willman & Co. v. Ala. Brok. Co.,* 42 So. 102; *McCutchen v. McCutchen,* 8 Port. 151; 6 N. W. 291; 58 N. W. 5; 16 Wis. 569; 13 N. Y. Supp. 939. The words

railway and railroad, are as nearly exact synonyms as any two words in the English language.—*Mobile R. R. Co. v. Yates,* 67 Ala. 164; *Ga. Ry. Co. v. Propst,* 43 Ala. 5; 16 N. W. 406. The word, railway, as commonly used includes not only the ties and rails but everything necessary to the operation of the permanent way.—13 C. P. A. 410; 69 Tenn. 516; 89 Mass. 523; 173 Ill. 508; 150 U. S. 1; 59 Tex. 654; 47 Pac. 725. A count based on Subd. 1 of the "Employer's Liability Act" which specifies the defect relied on by an averment, merely, that the defendant's "railway was defective," is too indefinite and insufficient in that respect, unless, construing all averments and intendents against the pleader, the count itself shows with reasonable certainty that some certain instrumentality (e. g., the track, coal chute, mail arm, or target board) is the part of the railway referred to as defective.—*L. & N. R. Co. v. Jones,* 130 Ala. 456; *Whatley v. Zenida Coal Co.,* 122 Ala. 118. A servant, duly employed, may be engaged about the business of his master and rendering services which benefit the master in his business; but unless the servant is engaged about the specific service for which he was employed, the employer master will not owe him any duty as a master, either under the Employer's Liability Act or at common law.—*A. G. S. v. Hill,* 105 Ala. 599; *Ry. Co. v. Chambliss,* 97 Ala. 171; *A. G. S. v. McWhorter,* 47 South. 84, 87-88; *L. & N. v. Hall,* 87 Ala. 708; Elliott on Railroads, (2 ed.) Sec. 1267, 1303; *So. Ry. Co. v. Widerner,* 119 Ala. 365. All reasonable intendents are to be construed against the pleader, and a count which alleges that the plaintiff was in the employ of the defendant at the time of his injury and was injured while "engaged about the business of defendant" will not be construed to aver that plaintiff was injured while rendering the specific service for which he was employed.—*Woodward*

[St. Louis & S. F. R. R. Co. v. Sutton.]

*Iron Co. v. Curl,* 44 South. 969; *S. S. S. & I. Co. v. Mob-iey,* 139 Ala. 425; *A. S. & W. Co. v. Griffin,* 42 South. 1034, 1039; 139 Ala. 548. It is to be doubted whether this modification of the prohibition against hearsay evidence would be accepted in Alabama.—*Terry v. Bank,* 93 Ala. 608; *Avery v. Avery,* 49 Ala. 195; *Walling v. Morgan Co.,* 126 Ala. 326; *McDonald v. Carnes,* 90 Ala. 148. Reports made to railway companies by their agents are, prima facie, incompetent as evidence for or against either party.—*A. G. S. v. Taylor,* 129 Ala. 238; *Culver v. Ry. Co.,* 108 Ala. 330; *Carroll v. E. T. V. & G. R. Co.,* 82 Ga. 542, 10 S. E. 163; 6 L. R. A. 214 & N.; *Howard v. Sav. Ry. Co.,* 84 Ga. 711, 11 S. E. 452; *St. Louis &c Co. v. Maddox,* 18 Kan. 546; *Chicago v. McKechney,* 205 Ill. 372, 68 N. E. 954, 585; *In re Devola Co.,* L. R. 22 Ch. Div. 593; *Ex parte Schoeff,* 74 Ohio St. 1, 77 N. E. 276; *Davenport v. Pa. R. Co.,* 166 Pa. St. 480, 31 Atl. 245; *Cully v. North P. R. Co.,* 35 Wash. 24; 77 Pac. 202. To be binding on his principal, admissions by an agent must be of facts within his knowledge and made in connection with the discharge of his duty.—*North Ala., etc. v. Whidden,* 103 Ala. 203. It is, of course, necessary that the relationship be first established by affirmative evidence.—*Postal, etc. Co. v. Brantley,* 107 Ala. 643; *Mobile, etc. Co. v. Cogsbill,* 85 Ala. 456; *Galbreath v. Cole,* 61 Ala. 139; *L. & N. R. Co. v. McGuire,* 79 Ala. 395.

BOWMAN, HARSH & BEDDOW, for appellee. Under the Practice Act of the city court, and under rule 12, circuit court practice, it was within the discretion of the court to strike the plea after amendment.—*Hudson v. Wood,* 102 Ala. 633; *Reid L. Co. v. Lewis,* 94 Ala. 626; *Chandler v. Riddle,* 24 So. 498. The fact that the court permitted an amendment to the plea was not an estoppel

[St. Louis & S. F. R. R. Co. v. Sutton.]

as against the discretion of the court or the plaintiff to make the motion to strike. The plea was without doubt a plea in abatement.—*Eagle I. Co. v. Malone,* 149 Ala. 367; *Same v. Baugh,* 147 Ala. 613. Even the forms of the Code indicate an abolishment of the technical and formal distinction.—1 Enc. P. & P. 1 and 2. The court properly overruled demurrers to count 2.—*Jackson L. Co. v. Cunningham,* 141 Ala. 213; *A. G. S. v. Davis,* 119 Ala. 573; *L. & N. v. Marbury,* 125 Ala. 237; *West Pratt C. Co. v. Andrews,* 43 So. 348; *Sloss S. S. & I. Co. v. Hutchinson,* 40 So. 115. The term railway, means a way on which trains pass by means of rails.—*Doughty v. Fairbanks,* 102 B. D. 359. Counts 2 and 3 are not demurrable upon the grounds taken.—*Bir. R. M. Co. v. Rockhold,* 143 Ala. 115. If it were necessary to aver that a plaintiff was engaged in the duties which he was employed to perform, then it would be necessary to prove such allegation.—82 Tex. 555; 134 Ind. 571; 56 Mich. 251; 107 Wis. 215; 31 Pac. 1090. Section 3910, Code 1900, specifically settles the point raised against the appellant. The sustaining of the demurrers to the several pleas is not insisted upon. It is a familiar principle that objections come too late after questions have been answered. The train sheet was a record prepared by the employees of the defendant in the usual course of business and may be introduced in the nature of an admission.— 91 S. W. 691; 158 Mass. 450; 138 N. C. 42; 56 L. R. A. 772. Under the facts in this case the contents of the train sheet were admissible as secondary evidence.

EVANS, J.—This is a tort action against the defendant railroad company, brought by an employee of the company, for damages alleged to have accrued to plaintiff on account of a personal injury averred to have been occasioned by the negligence of the defendant.

The first question to be determined is whether or not the trial court properly granted plaintiff's motion to strike defendant's plea, which is denominated by the defendant a plea to the jurisdiction of the court.

The facts necessary to be adverted to in determining this question, briefly stated, are as follows:

The action was begun by summons and complaint filed in the city court of Birmingham on the 5th day of July, 1907, copies of which were regularly served on the defendant on July 10, 1907.

The complaint shows on its face that the injury to plaintiff occurred in Walker county, Ala., on the 9th day of August, 1906; but neither summons nor complaint shows the residence of the plaintiff. The plea in question was filed on the 14th day of August, 1907, more than 30 days after service of the copies of summons and complaint, as above specified, on defendant. The plea is based on section 4207 of the Code of 1896, as amended by an act of the Legislature approved March 5, 1903, which provides: "A foreign or domestic corporation may be sued in any county in which it does business by agent; provided, that all actions for personal injuries must be brought in the county where the injury occurred, or in the county where the plaintiff resides; provided further, that such corporation does business by agent in the county of plaintiff's residence."—Gen. Acts 1903, p. 182. On the call of the cause for trial on the 11th of February, 1908, the court granted the motion of the defendant for leave to amend the plea, and after the amendment was made, on motion of the plaintiff, the court struck the plea from the files. The grounds of the motion are that the said plea was filed more than 30 days after the service of the summons and complaint on the defendant, and that defendant had waived its objections to the jurisdiction of the court. By the act amendatory

of the act establishing the city court of Birmingham,
approved February 28, 1889 (Acts 1888-89, p. 992), the
defendant was required "to appear and demur or plead
to the complaint within thirty days after the service."
Upon failing to appear and demur or plead within the
time specified, the act holds the defendant in default,
and subject to judgment by default on motion of the
plaintiff. The amendatory act of February 28, 1889, re-
ferred to above, in its first section, provides: "Said
court, except as in this act, or by some rule made and
adopted by the presiding judge of said court in conform-
ity to the powers vested in him by this act, when exer-
cising the jurisdiction and powers of the circuit court,
shall conform and be governed by the rules of procedure
and practice in the circuit court, so far as the same are
applicable." Rule 12 of the circuit court (Code 1896,
p. 1197) provides: "No plea in abatement shall be re-
ceived, if objected to, unless by the indorsement of the
clerk it appears to have been filed within the time for
pleading." There is nothing in the act preventive of the
applicability of rule 12 of the circuit court to proceed-
ings in the city court. Therefore it is enforceable in
that court, and is applicable in this instance, unless ap-
pellant's contention that the plea under consideration
is not a plea in abatement must prevail. In *Fields v.
Walker*, 23 Ala. 155, 163, this court said in speaking of
a plea to the jurisdiction: "The plea was evidently in-
tended as a plea to the jurisdiction of the court, and
must therefore be regarded a plea in abatement." See,
also, the following cases, in which pleas to the jurisdic-
tion (not of subject-matter, however) are regarded as
pleas in abatement: *Vaughan v. Robinson*, 22 Ala. 519;
*Burns v. Henry*, 67 Ala. 209; *Prim v. Davis*, 2 Ala. 24;
*L. & N. R. R. Co. v. Barker*, 96 Ala. 435, 11 South. 453;
*Eagle v. Baugh*, 147 Ala. 613, 41 South. 663; *Eagle Iron*

*Co. v. Malone,* 149 Ala. 367, 42 South. 734; *Karthaus v. N. C. & St. L. Ry.,* 140 Ala. 433, 37 South. 268; *Campbell v. Crawford,* 63 Ala. 392; *Harwell v. Lehman,* 72 Ala. 344, and there must be many other cases in the reports that so regard such pleas.

But section 4207 of the Code of 1896, as amended, strictly and technically speaking, refers to the venue of the cause of action rather than to the jurisdiction of any particular court (*Eagle v. Baugh,* 147 Ala. 613, 41 South. 633) of the subject-matter; for, the cause of action being a transitory one, confessedly there was no lack of jurisdiction in the city court of Birmingham of the subject-matter of the suit. In other words, the general jurisdiction of the court cannot be, and is not, disputed; but the plea simply sets up a special privilege of place fixed by the statute, and denies the existence of a cause of action within the local limits of the court's jurisdiction. Manifestly there is a distinction between such pleas as this one and pleas which present as a defense want of jurisdiction in the court of the subject-matter, which latter point may be made at any time, and may, if apparent upon the record, be taken by the appellate court, as the judgment of the court in such state of the case, if one were rendered, would be a nullity.— *Karthaus v. N. C. & St. L. Ry., supra; London v. Cox,* L. R. 2 H. L. 239; *Companhia de Mocambique v. South African Co.,* 2 Q. B. 358, 61 L. J. Q. B. 663; *Campbell v. Crawford,* 63 Ala. 393; *Harwell v. Lehman,* 72 Ala. 344; 1 Ency. Pl. & Pr. (2) p. 3; 31 Cyc. 166. Cases analogous to the one sub judice are *Campbell v. Crawford* and *Harwell v. Lehman, supra,* in which it was held that a plea in the nature of a plea in abatement was the appropriate mode of raising the objection that the bill was not filed in the district of the residence of a material defendant, and of asserting the defendant's exemption

[St. Louis & S. F. R. R. Co. v. Sutton.]

from suit in any court of chancery not of the district of his residence. See, also, *Noles v. Marable,* 50 Ala. 336.

And a case directly in point, and one which, if sound, is decisive of the question in hand, is that of *Hudson v. Wood,* 102 Ala. 631, 15 South. 356. While conceding that the decision just referred to is in conflict with the position assumed by the defendant in this case, yet the defendant urges upon the attention of the court that the decision is "narrowly reasoned," and that the conclusion there reached is unsound. Not only this, but he further insists that the decision is shaken by the "suggestion" of the court in *Ex parte Scudder-Gale Grocer Co.,* 129 Ala. 434, 25 South. 44, "that the filing of pleas after the time for pleading might present an obstacle to the rendition of a judgment by default, although the benefit of the default had been claimed and insisted upon by plaintiff, before their filing; and also by the intimation of Stone, C. J., in *U. S., etc., Co. v. Weir,* 96 Ala. 396, 11 South. 436, that, to take advantage of the statute, application should be made for judgment for want of a plea." After considering the two cases relied upon by appellant's counsel as being in conflict with, or opposed to *Hudson v. Wood,* we confess our inability to discover the slighest conflict. The suggestion referred to in the 120th Ala. Case, that judgment by default could not be entered with plea on file, is not only entirely rational, but is also consistent with all that was decided in the *Hudson-Wood Case;* for it was not determined in the latter case that a judgment by default might be rendered with a plea (even though filed after time) on file, but it was expressly decided in that case that if a defendant in default, "without leave, puts a plea upon the file, the court in its discretion, may strike it therefrom." And this is precisely what occurred in the instant case. In the second case referred to by counsel

(96 Ala. 396, 11 South. 436), a demurrer was filed within the time allowed for pleading, which on hearing was overruled. A plea in bar (ne unques administratrix) was then filed, but not within 30 days from service, and on motion of plaintiff this plea was stricken. Judge Stone in that case differentiates it from the one in which no demurrer or plea is filed within the time; and said in respect to a case in the latter category: "Allowing the 30 days to elapse without offering defense of law or fact, the defendant disobeys the positive mandate of the statute, and places himself at the mercy of the court, without the right to complain"—citing *Reed Lumber Co. v. Lewis,* 94 Ala. 626, 10 South. 333. The court did hold that, after demurrer was overruled, any defense to the merits (plea in bar) if offered before default claimed was in time. So, we repeat, there is not any conflict between the two cases and the *Hudson-Wood Case,* and we reaffirm, and adhere to the latter case as authority.

But it is said by appellant's counsel that, notwithstanding the court may hold that the *Hudson-Wood Case* is sound, his case is not concluded by it, because, he says, "on entering on the trial of the case, the defendant, for the sake of technical accuracy, amended the inducement to the plea to the jurisdiction. This application for amendment was heard by the court, without objection from plaintiff, and in the absence of any previous application for judgment or motion to strike the plea, and a formal order was made allowing the amendment.

It is then contended that this action of the court (assuming that the court was vested with discretion in the premises) was a formal and sufficient recognition of the plea. This may all be true, but it will be borne in mind that the record shows nothing that the plaintiff did or said. Of course, it does not, as the plaintiff is not the exceptor. However, the allowance of the amendment

named, even without objection by the plaintiff, did not deprive the court of the power to exercise its discretion and strike the plea on motion made by the plaintiff, and the motion appears to have been made as soon as the plea was amended.—*Reed Lumber Co. v. Lewis,* 94 Ala. 626, 10 South. 333; *Ex parte Scudder-Gale Grocery Co.,* 120 Ala. 434, 437; 25 South. 44; *U. S., etc., Co. v. Weir,* 96 Ala. 396, 11 South. 436; *Hudson v. Wood,* 102 Ala. 633, 15 South. 356; *Chandler v. Riddle & Co.,* 119 Ala. 507, 24 South. 498. The cases cited by appellant on this particular point do not militate against what is said above. Even if rule 10 of circuit court practice (Code 1896, p. 1196) were applicable to the city court of Birmingham, it would not avail the defendant in this cause. That rule and rule 12 are in harmony, and both have a field of operation. The first rule does not mean that, before judgment by default, the defendant should be allowed to plead in abatement of the cause of action, if he has passed the time of pleading. In the instant case the defendant was allowed to plead to the merits, but his plea that was stricken, being in abatement, came directly under the ban of rule 12, and according to the authorities above adverted to, construing practice acts similar to the one here involved, defendant was "at the mercy of the court without the right to complain" in regard to said plea. The conclusion is that the court committed no error in striking the plea. The cause was finally submitted to the jury upon only two of the several counts in the complaint—counts 2 and 3.

Plaintiff was in the employment of the defendant as a brakeman on a freight train when he received the injuries complained of. The second count of the complaint is predicated upon subdivision 1 of section 1749 of the Code of 1896, and the third count is founded upon the

fifth subdivision of the same section. The second counts for recovery upon a defective "railway" at or near the point where plaintiff was thrown, or was caused to fall, from defendant's train; while the third count relies for recovery upon the allegation that the engineer in charge or control of the locomotive "negilgently caused or allowed plaintiff to be thrown or caused to fall from said train as aforesaid by negligently causing or allowing said train to run too roughly or too rapidly."

Considerable argument is indulged in by appellant in its effort to show that the averment of the defect is too general in the second count to put appellant on notice as to what charge of negligence was to be met upon the trial of the case. Taking the count as a whole, we can see no material difference between the case at bar in respect to this point, and that of *Jackson Lumber Co. v. Cunningham,* 141 Ala. 206, 37 South. 445, and on the authority of that case the court holds that the demurrer presenting the point is not meritorious.—*West Pratt. etc., Co. v. Andrews,* 150 Ala. 368, 43 South. 348; Bouvier's definition of Railway; *Doughty v. Firbank,* 10 Q. B. Div. 358.

It is next insisted that both counts 2 and 3 are defective, in that they fail to show that plaintiff was injured in the performance of duties which he had been employed to perform. Each of said counts aver "that heretofore, to wit, on the 9th day of August, 1906, defendant was operating a railway and an engine and train upon said railway, and on said day, while plaintiff was in the service or employment of defendant, and was upon said train engaged in or about the said business of defendant, and while said train was upon said railroad in Walker county, Ala., to wit, at or near a switch, near a place known as Long & McCollum's mine, plaintiff was thrown or caused to fall from said train," etc. The defendants

demurred to each of these counts upon the ground that "it is not averred that plaintiff was injured while engaged in the performance of the duties for which he was employed by defendant."

We are of opinion that the court erred in overruling this ground of demurrer. Plaintiff averred in each of these counts that defendant was operating a railway and an engine and train upon said railway. Plaintiff further averred in each of said counts that plaintiff was in the service or employment of defendant and was upon said train engaged in or about the business of defendant. What was said business of defendant? Operating a railway and an engine and train upon said railway. The court judicially knows that in operating a railway and an engine and train upon said railway there are a great many persons used in the performance of very different duties. Some of these duties do not require the person performing them to be upon the train at all We are of opinion that while counts 2 and 3 of the complaint show that plaintiff was "in the service or employment of defendant," and that he was injured while doing something for defendant in operating its railway when he received the injury complained of, yet it fails to show what service he was employed to perform, or what service he was performing at the time, or that he was performing the service for which he was employed. He might have been performing any service connected with operating the railway, and have been employed for some entirely different service from that which he was performing at the time he received the injury, and still the proof of the facts would have proved the complaint. He might have been a conductor and have been injured while performing the duties of a brakeman, or he might have been a section boss or common laborer employed to help keep the track in repair, and have had no business

upon the train at all, but have undertaken, of his own volition and without the knowledge of those in charge of the train, to cross over the tops of the cars, to do something pertaining to the duties of a brakeman in the operation of the train.     In either of such cases the facts would have justified the allegations of counts 2 and 3; but under the law of the land he would have had no right of action for such an injury against the employer for simple negligence.—*Sloss-Sheffield Steel & Iron Co. v. Chamblee,* 159 Ala. 185, 48 South. 664; *Georgia Pacific Railroad v. Propst,* 85 Ala. 203, 4 South. 711; *Green v. Bessemer Coal, Iron & Land Co.,* 162 Ala. 609, 50 South. 289.    We are of opinion that, construing these two counts most strongly against the pleader, neither of them aver facts which so much as show that plaintiff was rightfully upon the train.

We will next consider those grounds in the assignment of errors presenting for review rulings of the trial court on the admissibility of testimony.

It is decided in quite a number of our cases, that where a question is not objected to, and the answer to the question is responsive, the party against whom it is offered cannot, after answer made, be heard to object. This is upon the principle that the law will not permit a litigant to wait until the witness answers, and then allow him the benefit of the answer, or the right to move to exclude it according as it proved favorable or detrimental to his interest.    The objection by the defendant to the question propounded to plaintiff, "What was the speed allowed your train by the company?" and the motion to exclude the answer to the question, fall within the principle above stated, and on the following authorities the trial court cannot be put in error for the ruling made against defendant and covered by the sevententh and eighteenth grounds in the assignment of errors.—

*McCalman's Case,* 96 Ala. 98, 11 South. 408; *Billings-ley's Case,* 96 Ala. 126, 11 South. 409; *Taylor's Case,* 100 Ala. 142, 14 South. 634; *Ellis' Case,* 105 Ala. 72, 75, 17 South. 119; *Evans' Case,* 109 Ala. 11, 21, 19 South. 535; *Payne v. Long,* 121 Ala. 385, 391, 392, 25 South. 780; *So. Ry. Co. v. Leard,* 146 Ala. 349, 362, 29 South. 449; *Tutwiler v. Nichols,* 146 Ala. 364, 372, 39 South. 762, 119 Am. St. Rep. 34; *West Pratt, etc., Co. v. Andrews,* 150 Ala. 368, 376, 43 South. 349. And see cases cited in the opinion in last case, not here cited. The case is not withdrawn from the influence of the principle stated by the fact that, after the answer had been given and after appellant's counsel asked the witness a question, counsel then stated that he did not understand the question. This all occurred under the eye of the court, and it was within the irrevisable discretion of the trial judge, under the facts and circumstances of the case, even assuming that the answer of the witness was illegal testimony, to exclude or permit the answer.

The ruling of the trial court covered by the nineteenth and twentieth grounds in the assignment of errors in regard to questions propounded to plaintiff on his redirect examination, and, having reference to statement made by plaintiff to J. B. France, are upon the principle and authorities above referred to, safe from reversible error.

The twenty-first ground in the assignment of errors is insisted upon, but the bill of exceptions shows that the ruling of the court was favorable to the defendant; that is, after the plaintiff had answered the question objected to, the defendant objected to the answer and the court sustained the objection. If it was error to allow the witness to answer the question objected to, the court, by sustaining defendant's objection to the answer, relieved the former ruling of error prejudicial to the defendant.

The plaintiff's testimony tended to show that train No. 255 at the time he was thrown from it (August 9, 1906) was moving at the rate of 45 miles an hour; whilst the testimony of the engineer and that of the conductor, witnesses for the defendant, tended to show that the rate at which the train was running was only 25 miles an hour. The testimony further shows that the train was running at the time of the injury between the stations of Townley and Jasper, and towards Jasper, which stations are 12 miles apart. And the engineer testified that he did not think they could have made the distance between the two stations in 14 minutes, and that he had not seen the train sheet and knew not what was on it.

The conductor testified, amongst other things, as follows: "Q. You always put it down on your train sheet when you arrive and depart from a station? A. I do not, sir. Q. Well, the dispatcher does? A. I suppose he does. Q. Which is it, telegraph operator or dispatcher? A. Well, there is an operator at those places that report to the dispatcher. Q. Your train sheet shows exactly the time that you left each station where there was an operator and the time you arrived at each station where there was an operator, don't it? A. Well, sometimes that is correct, and sometimes it is not. Q. I asked you whether the train sheet showed that? The time sheet that is made up by the operators and dispatchers shows or purports to show, does it not, when a train arrives and when it departs from each telegraph station? A. That is what it is intended to do. Q. Now, Townley had an operator, didn't it? A. I think they did. Q. And Jasper had an operator? A. Yes. Q. How far from Townley to Jasper? A. About 12 miles." Thereupon, as the bill of exceptions recites, "plaintiff's counsel asked the witness if the train sheets didn't show that that 12 miles was made in 14 minutes? The court

sustained the defendant's objection to this question, whereupon plaintiff's counsel gave notice to defendant's counsel in open court to produce the train sheet. This occurred on the day before the examination of V. N. Davis by plaintiff in rebuttal." After the defendant had closed its evidence, plaintiff called, as a witness, V. N. Davis, who testified: "I am locomotive engineer for the St. Louis & San Francisco Railroad Company. I have seen in the last day or two the train sheet for train 255 of the 9th of August, 1906, in the dispatcher's office in the Woodward Building in Birmingham here. I believe I saw it Monday morning of this week." Plaintiff's counsel then asked the witness the following question: Mr. Davis, tell the jury how many minutes or what time that train sheet showed that the train 255 consumed in going from Townley to Jasper." The defendant objected to this question upon the ground that it was not shown to have been a train sheet made by the agents of the defendant in the course of their employment, and upon the further ground that it called for immaterial, irrelevant, and illegal testimony, and for hearsay and secondary evidence and for a conclusion of the witness.

The court overruled the objection, and defendant excepted, whereupon plaintiff's counsel asked: "State what that shows, Mr. Davis, the train sheet shows, in reference to the time of that train between Townley and Jasper." Objection was made to this question upon the same grounds as specified to the preceding question; and the objection was overruled, and defendant excepted. The witness answered: "I could not just say what time the train left Townley and arrived at Jasper, but I think there were 14 minutes consumed between Townley and Jasper." There can be no question that the speed of the train was a material and relevant fact under the issues

made by the third count of the complaint, and even by some of defendant's pleas; but the vital question arising out of the objections to the proof allowed to be made is whether the train sheet, if it had been offered as evidence, would have been competent and legal evidence. Appellant's counsel cite in their brief in support of the contention that the train sheet would not be competent and legal evidence a line of cases in which it is held that reports of the circumstances or facts in regard to accidents made by an agent or servant of a railroad company subsequent to the occurrence, the subject of the report, are not evidence against the company. These cases are *Culver v. Alabama Midland Railroad Co.,* 108 Ala. 330, 18 South. 827, and *A. G. S. R. R. Co. v. Taylor,* 129 Ala. 238, 29 South. 637. The principle upon which these cases proceeded is a sound one, and will not de disturbed here. Such reports as were therein made are not of the res gestae. They are merely narratives by the agent or servant of past transactions.

Here, may we not assume it to be in the category of common knowledge that all railroads of the class the defendant is in have adopted "the system of controlling the movement of their trains and keeping a record thereof—using the telegraph offices on their lines of road as the medium for communication," and that it would be disastrous for them to do otherwise? Whether so or not, the court is at the conclusion that the evidence above recited shows that the defendant had adopted such a system, and was proceeding thereunder on the day the cause of action in the present case is alleged to have arisen, that it further shows that Townley was a telegraph station, and affords a reasonable inference that the time when train 255 passed Townley on August 9, 1906, was properly wired to the dispatcher, and also that the time of its arrival at Jasper was wired to that

official. If otherwise (as is pertinently asked by counsel for appellee), whence came the train sheet which was shown to be in defendant's possession in Birmingham?

In *L. & N. R. R. Co. v. Daniel,* 122 Ky. 256, 91 S. W. 691, 28 Ky. Law Rep. 1146, 3 L. R. A. (N. S.) 1190, the court said: "The courts need not discredit what the common experience of mankind relies on. Such is the use of books or records of original entries made under circumstances that are a guaranty of their trustworthiness. In the conduct of a modern railroad system, it is indispensible that in the movement of trains an exact knowledge should be had at a central point of observation and direction of the location of each train in operation over a given line, or between given terminals, and that this knowledge should accompany each movement of each train until it has arrived at its destination. * * * Those in charge of each train must be under existing conditions in a large measure ignorant of the movement of others. The train dispatcher, who directs and keeps tab on each, and maintains as it were a bird's-eye view of the whole system under his control, is the practical solution of this difficulty as it now exists. It would be folly for him to trust to his memory, even for the hour, as to the whereabouts or the condition of each train. He must have a record before him upon which he can rely, to which he can resort any moment to acquaint his mind with those important facts as verities. * * * He can only know what is reported to him from the various intermediate points of observation by those in charge. This is done by the use of the telegraph. * * * He immediately records it on the record, which he is required to and does do for that purpose. The very nature of the matter, its great importance to so many lives, not to mention fortunes, dependent upon his rec-

ord being accurately kept, is the strongest possible guaranty to the general accuracy of the entries." The making of such reports from telegraph stations, as has been stated, was in the usual course of the defendant's business, "so that the sheet was not an accidental memorandum, and every step by which the information spread upon it was gathered, transmitted, and entered was an act performed by some person in the line of his duty and in the usual course of his employment, * * * and the acts were so connected with and dependent upon each other as to form parts of one transaction."

It requires no argument to show that a system of reporting arrivals and departures of trains, which does not require the report to be made immediately, would be entirely futile as a means of avoiding accidents on the road; so that from the evidence we think it may be accurately said that the making of the reports by the operators formed a part of the res gestae of the passing of the train by the stations; and here is found the chief point in differentiae between the cases relied on by appellant and the case in hand. So far as concerns the failure to produce the operators, or the dispatcher, to testify to the correctness of the contents of the sheet, as an obstacle to the admissibility of the sheet, whatever might be the force of that suggestion if the defendant were seeking to use the sheet in evidence in its own behalf, yet, upon the testimony in the case, the considerations above, and upon the well-reasoned opinion in the case of *Fireman's Insurance Co. v. Seaboard Air Line Railway,* 138 N. C. 42, 50 S. E. 452, 107 Am. St. Rep. 517, 521, the court is of the opinion that, when offered (as in the instant case) against the party who kept or made the sheet, the plaintiff is relieved from calling the dispatcher or operators as witnesses to authenticate the train sheet.—*Donovan v. Boston R. R. Co.,* 158 Mass.

450, 33 N. E. 583; *Callihan v. Washington, etc., Co.,* 27 Wash. 154, 67 Pac. 697, 56 L. R. A. 772, 91 Am. St. Rep. 829.

The next question is whether the ruling of the court admitting secondary evidence of the contents of the sheet can be justified. The evidence without conflict shows that the train sheet was in defendant's possession in the city of Birmingham; that the trial was proceeding in the city court of Birmingham; that an entire day's notice was given to the defendant to produce the sheet; and that it failed so to do. Under such circumstances, our decisions authorize proof of the contents of a document the production of which had been demanded. The rule is thus tersely stated by Coleman, J., in *Smith v. Collins,* 94 Ala. 394, 406, 10 South. 334: "A failure after legal notice to produce the books or other written documents in a court of law, which may furnish legal evidence in proper cases, authorizes proof of their contents." And again, by Parsons, J., as follows: "If the secondary evidence be not fully satisfactory, they who are presumed to have had control of the best should have produced it, for in this case they had been notified to do so."—*Mims' Ex'rs v. Sturtevant,* 18 Ala. 359, 364; *Bright v. Young,* 15 Ala. 112, 116, 117; *Loeb v. Huddleston,* 105 Ala. 257, 261, 16 South. 714. It follows that the court committed no error in admitting secondary evidence of the contents of the train sheet.

This brings us to the consideration of the charges refused to the defendant; but, as these must be construed with reference to the complaint to which demurrer is held to be good, it becomes useless to consider them.

For the error pointed out, the case is reversed and remanded.

Reversed and remanded.

SIMPSON, ANDERSON, and SAYRE, JJ., concur..